**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE ANDREU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 06132 |
| v. ) | |
| ) | Judge Der-Yeghiayan |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

**ANSWER AND AFFIRMATIVE DEFENSE TO COMPLAINT**

Defendant United Parcel Service, Inc. ("UPS") submits its Answer and Affirmative Defenses to the Complaint filed by Plaintiff Jose Andreu ("Andreu" or "Plaintiff") and states as follows:

**Nature of Case**

1. Plaintiff brings this action against Defendant to recover damages proximately caused by Defendant's illegal retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq., and the common law and public policy of the State of Illinois.

**Answer:** UPS admits that Plaintiff brings this action to recover damages allegedly and proximately caused by UPS's alleged illegal retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq., and the common law and public policy of the State of Illinois, but denies that it violated any law, regulation, statute or rule with regard to Plaintiff.

**The Parties**

2. Plaintiff, Jose Andreu (hereafter "Jose"), is an individual residing at all relevant times in Chicago, Illinois, County of Cook.

**Answer:** UPS admits the allegations of Paragraph 2.

3.      Defendant, United Parcel Service, Inc. (hereafter "UPS"), is an Ohio corporation registered and licensed to do business in Illinois.

**Answer:**   UPS admits that it is an Ohio corporation registered and licensed to do business in Illinois, but denies the remaining allegations of Paragraph 3.  UPS further denies that it violated any law, regulation, statute or rule with regard to Plaintiff.

4.      Venue is proper in this Court in that Defendant's illegal acts complained of herein took place within this Court's geographical jurisdictional boundaries at UPS' Addison, Illinois facility.

**Answer:**   UPS admits that venue is proper in the U.S. District Court for the Northern District of Illinois.

**Facts Common to all Counts**

5.      Jose began his employment with UPS in or around September, 1996.

**Answer:**   UPS admits the allegations of Paragraph 5.

6.      Starting in 2003, Jose began working for UPS in the position of package driver.  In this position, among other duties, he reported each work day to UPS' Addison, Illinois facility and delivered parcels in UPS' vehicles, departing from and returning to the Addison facility each work day.

**Answer:**   UPS admits the allegations of Paragraph 6.  Answering further, Plaintiff was a swing or vacation package car driver which means Plaintiff did not have a regular route but rather filled in where needed.

7.      On or about January 24, 2005, Jose injured his back at work while on his assigned route delivering packages (hereafter the "work accident").

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and therefore denies same. Answering further, Plaintiff contacted UPS while on his route on or about January 24, 2005, and said he had injured himself.

8.     He immediately called into UPS and reported the work accident and his resulting back injuries.

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of whether Plaintiff immediately called into UPS and therefore denies same. UPS admits the remaining allegations of Paragraph 8.

9.     Later in the day on January 24, 2005, one of Jose's superiors, Dave Ziltz, met Jose out on his route. Upon meeting Jose out on his route, Mr. Ziltz stated to Jose that he believed Jose was lying about the work accident and/or related injuries, and faking his pain.

**Answer:**     UPS admits that Supervisor Davie Ziltz met Plaintiff on his route on January 24, 2005 and that the meeting occurred after Plaintiff had called UPS. UPS denies the remaining allegations of Paragraph 9.

10.     At various times subsequent to January 24, 2005, Mr. Ziltz repeated his assertions and belief that Jose was lying about the work accident and/or related injuries, and faking his pain.

**Answer:**     UPS denies the allegations of Paragraph 10.

11.     Also on January 24, 2005, upon Jose's return to UPS' Addison facility at the end of his work day, he sat down with Mr. Ziltz and observed Mr. Ziltz type the work accident and related injury information into a computer. He also observed and listened as Mr. Ziltz called UPS' worked (sic) compensation insurance carrier, Liberty Mutual, and reported the work accident and related injuries.

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of what Plaintiff observed and/or listened to and therefore denies same. UPS admits that on or about

January 24 or 25, 2005, a work accident report was filled out and the incident was reported to Liberty Mutual, UPS worker's compensation insurance carrier.

12. On January 25, 2005, Jose was examined by UPS' physician, Dr. Anthony Tesmond, in connection with the injuries he sustained from the work accident.

**Answer:** UPS denies that a Dr. Anthony Tesmond is a "UPS physician", but admits that Plaintiff was examined by a Dr. Tesmond on or about January 25, 2005 in connection with his claimed injuries.

13. Following the work accident, Jose missed work on January 25th and 26th.

**Answer:** UPS denies that Plaintiff did not work for UPS on January 25 or 26, 2005.

14. Upon returning to work on January 27, 2005, Jose advised Dave Ziltz that he was still experiencing back pain from the injuries he sustained from the work accident.

**Answer:** UPS admits the allegations of Paragraph 14.

15. In January and February 2005, Jose was examined several additional times by Dr. Tesmond and/or other physicians in his office in connection with the injuries he sustained from the work accident.

**Answer:** UPS is without knowledge or information sufficient to form a belief as to the truth of who examined Plaintiff or whether he was examined "several times" in the stated time period and therefore denies same. UPS admits that Plaintiff was examined during the stated time frame.

16. Dr. Tesmond and/or his office notified UPS and/or its workers' compensation insurer of each and every occasion that Jose received medical treatment in connection with the injuries he sustained from the work accident.

**Answer:** UPS is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies same.

17. In February and early March 2005, Jose sought and received additional medical treatment from his own physicians in connection with the injuries he sustained from the work accident.

**Answer:** UPS is without knowledge or information sufficient to form a belief as to whether Plaintiff sought and received additional medical treatment and therefore denies same. Answering further, it is UPS's understanding that Plaintiff returned for treatment beginning February 10, 2005 after previously being released to full duty work.

18. In February and early March 2005, Jose's physicians notified UPS and, in some instances, Jose's direct supervisors, of Jose's ongoing treatment for the injuries he sustained from the work accident, his prognosis and/or ability to return to work.

**Answer:** UPS admits that on occasion after February 9, 2005, it received notes from physicians concerning Plaintiff's condition.

19. On or about February 9, 2005, Dave Ziltz met Jose while he was on his route delivering packages. Upon his arrival at Jose's truck, Mr. Ziltz was angry and yelling at Jose. Mr. Ziltz accused Jose of lying about the number of packages and/or stops he had left for the day in an earlier communication Jose had with the Addison facility. Dave Ziltz told Jose he would be fired.

**Answer:** UPS admits that Ziltz met Plaintiff while Plaintiff was on his route on February 9, 2005. UPS denies the remaining allegations of Paragraph 19. Answering further, in response to a request for him to pick up a package, Plaintiff had contacted the UPS facility around 4:00 p.m. and claimed he still had sixty stops to make and would not be done until 9:00 p.m. Ziltz, who was driving a route that day due to a shortage of drivers, arrived to assist Plaintiff at 4:42 p.m. and found only about 20 packages on Plaintiff's vehicle. Ziltz informed Plaintiff he was being placed on notice of termination for dishonesty.

20. On or about February 11, 2005, Jose informed his superiors that he could no longer perform his duties due to the pain he was experiencing from the work accident and related injuries.

He subsequently missed several days of work, and continued to receive medical treatment. He returned to work on or about February 17, 2005.

**Answer:** UPS admits that Plaintiff informed his supervisors that he would not drive, that he missed several days of work, and that he returned to work on or about February 17, 2005. UPS is without knowledge or information sufficient to form a belief as to whether Plaintiff continued to receive medical treatment and therefore denies same. UPS denies the remaining allegations of Paragraph 20.

21. On March 4, 2005, Jose's superior, Kerri Snyder, told Jose that his employment with UPS was terminated effective immediately for alleged (sic) being dishonest on February 9, 2005. Mr. Snyder then asked another supervisor who was present to escort Jose off of the premises.

**Answer:** UPS admits the allegations Paragraph 21. Answering further, Plaintiff did not timely submit a grievance pursuant to the applicable collective bargaining agreement challenging his termination.

22. At all relevant times, Jose's performance met or exceeded UPS' legitimate expectations. Jose was not dishonest on February 9, 2005, and did nothing to legitimately warrant the termination of his employment.

**Answer:** UPS denies the allegations of Paragraph 22.

### UPS TERMINATED JOSE'S EMPLOYMENT IN RETALIATION FOR HIS PROTECTED ACTIVITIES IN VIOLATION OF THE ILLINOIS WORKERS' COMPENSATION ACT, COMMON LAW AND PUBLIC POLICY

23. Jose's reporting the work accident and related injuries to UPS on January 24, 2005, and seeking medical treatment for such injuries commencing on January 25, 2006 (sic), and continuing through the day UPS terminated his employment (i.e., March 4, 2005), all as described above, are activities protected by the by the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.* (the "Act").

**Answer:** The allegations of Paragraph 23 require legal conclusions and UPS therefore denies same. UPS admits that reporting a work accident and related injuries and seeking medical treatment

for work-related injuries are activities protected by the by the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.*

24. UPS was aware of Jose's protected activities under the Act as described above at the time it decided to terminate his employment.

**Answer:** UPS was aware that Plaintiff had submitted a worker's compensation claim and was receiving treatment at the time of his termination but denies that said claim or treatment played any part in Plaintiff's termination.

25. Jose's protected activities under the Act were a motivating factor behind UPS' decision to terminate his employment.

**Answer:** UPS denies the allegations of Paragraph 25.

26. As such, UPS' termination of Jose's employment on March 4, 2005, was causally related to his protected activities under the Act.

**Answer:** UPS denies the allegations of Paragraph 26.

27. UPS's termination of Jose was therefore an illegal retaliatory discharge in contravention of Illinois public policy as stated and set forth in the Act.

**Answer:** UPS denies the allegations of Paragraph 27.

28. As a direct and proximate result of UPS' illegal termination of his employment, Jose has suffered a loss of income in the form of wages and prospective retirement benefits, social security and other employment benefits, emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

**Answer:** UPS denies the allegations of Paragraph 28.

29. The above described conduct by UPS was wilful and wanton, and with reckless disregard and indifference to the law and the public policy of Illinois, and to Jose's rights. UPS should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

**Answer:** UPS denies the allegations of Paragraph 29.

### Affirmative Defense

Plaintiff is barred from recovery because he has failed to exercise reasonable efforts to mitigate his alleged damages.

Dated: November 9, 2007                    UNITED PARCEL SERVICE, INC.

By: /s/ D. Scott Watson
    One of Its Attorneys

John A. Klages (ARDC #06196781)
D. Scott Watson (ARDC # 06230488)
Ellen M. Girard (ARDC #06276507)
Meghan E. Riley (ARDC #06288548)
Quarles & Brady LLP
500 West Madison, Suite 3700
Chicago, IL 60661
312/715-5000
312/715-5155 (fax)

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on November 9, 2007, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Timothy J. Coffey
>The Coffey Law Office, P.C.
>1403 East Forest Avenue
>Wheaton, Illinois 60187
>Email: tcofflaw@sbcglobal.net

>/s/ D. Scott Watson