'JAN 0 7 2008

*FILED*

JAN - 7 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSE ANDREU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6132 |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| Defendant. | ) | Magistrate Judge Mason |

## PLAINTIFF'S EXHIBITS IN SUPPORT OF
## HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Exhibit 1    Defendant's Answer and Affirmative Defense to Complaint

Exhibit 2    Defendant's Notice of Removal

Exhibit 3    Defendant's Memorandum of Clarification of Principal Place of Business

Exhibit 4    Plaintiff's Deposition Transcript

Exhibit 5    Plaintiff's Declaration

Exhibit 6    Plaintiff's Documents Bates-Stamped P000259-269

Exhibit 7    Plaintiff's Documents Bates-Stamped P000350-375

Exhibit 8    Defendant's Amended Rule 26(a)(1) Disclosures

Exhibit 9    Court 's June 14, 2007, Order

Exhibit 10    Plaintiff's First Request for Production of Documents

1

Exhibit 11     Defendant's Objections and Responses to Plaintiff's First Request for

Production of Documents

Date:  January 7, 2008

Respectfully Submitted,
Plaintiff, JOSE ANDREU,

By:_____

Timothy J. Coffey
THE COFFEY LAW OFFICE, P.C.
Attorneys for JOSE ANDREU
1403 E. Forest Avenue
Wheaton, IL  60187
(630) 534-6300

**Plaintiff's Exhibit 1**

**Defendant's Answer and Affirmative Defense to Complaint**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSE ANDREU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 06132 |
| v. | ) |
| | ) Judge Der-Yeghiayan |
| UNITED PARCEL SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

## ANSWER AND AFFIRMATIVE DEFENSE TO COMPLAINT

Defendant United Parcel Service, Inc. ("UPS") submits its Answer and Affirmative Defenses

to the Complaint filed by Plaintiff Jose Andreu ("Andreu" or "Plaintiff") and states as follows:

**Nature of Case**

1.      Plaintiff brings this action against Defendant to recover damages proximately caused by Defendant's illegal retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq., and the common law and public policy of the State of Illinois.

**Answer:**      UPS admits that Plaintiff brings this action to recover damages allegedly and

proximately caused by UPS's alleged illegal retaliatory discharge in violation of the Illinois Worker's

Compensation Act, 820 ILCS 305/1 et seq., and the common law and public policy of the State of

Illinois, but denies that it violated any law, regulation, statute or rule with regard to Plaintiff.


**The Parties**

2.      Plaintiff, Jose Andreu (hereafter "Jose"), is an individual residing at all relevant times in Chicago, Illinois, County of Cook.

**Answer:**      UPS admits the allegations of Paragraph 2.

QBCHI\920018.00936\550135.1

3.      Defendant, United Parcel Service, Inc. (hereafter "UPS"), is an Ohio corporation registered and licensed to do business in Illinois.

**Answer:**     UPS admits that it is an Ohio corporation registered and licensed to do business in

Illinois, but denies the remaining allegations of Paragraph 3. UPS further denies that it violated any

law, regulation, statute or rule with regard to Plaintiff.

4.      Venue is proper in this Court in that Defendant's illegal acts complained of herein took place within this Court's geographical jurisdictional boundaries at UPS' Addison, Illinois facility.

**Answer:**     UPS admits that venue is proper in the U.S. District Court for the Northern District of

Illinois.

### Facts Common to all Counts

5.      Jose began his employment with UPS in or around September, 1996.

**Answer:**     UPS admits the allegations of Paragraph 5.

6.      Starting in 2003, Jose began working for UPS in the position of package driver. In this position, among other duties, he reported each work day to UPS' Addison, Illinois facility and delivered parcels in UPS' vehicles, departing from and returning to the Addison facility each work day.

**Answer:**     UPS admits the allegations of Paragraph 6. Answering further, Plaintiff was a swing

or vacation package car driver which means Plaintiff did not have a regular route but rather filled in

where needed.

7.      On or about January 24, 2005, Jose injured his back at work while on his assigned route delivering packages (hereafter the "work accident").

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 7 and therefore denies same.  Answering further, Plaintiff contacted

UPS while on his route on or about January 24, 2005, and said he had injured himself.

     8.     He immediately called into UPS and reported the work accident and his resulting back
injuries.

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of

whether Plaintiff immediately called into UPS and therefore denies same.   UPS admits the

remaining allegations of Paragraph 8.

     9.     Later in the day on January 24, 2005, one of Jose's superiors, Dave Ziltz, met Jose out
on his route. Upon meeting Jose out on his route, Mr. Ziltz stated to Jose that he believed Jose was
lying about the work accident and/or related injuries, and faking his pain.

**Answer:**     UPS admits that Supervisor Davie Ziltz met Plaintiff on his route on January 24, 2005

and that the meeting occurred after Plaintiff had called UPS.  UPS denies the remaining allegations

of Paragraph 9.

     10.     At various times subsequent to January 24, 2005, Mr. Ziltz repeated his assertions and
belief that Jose was lying about the work accident and/or related injuries, and faking his pain.

**Answer:**     UPS denies the allegations of Paragraph 10.

     11.     Also on January 24, 2005, upon Jose's return to UPS' Addison facility at the end of
his work day, he sat down with Mr. Ziltz and observed Mr. Ziltz type the work accident and related
injury information into a computer. He also observed and listened as Mr. Ziltz called UPS' worked
(sic) compensation insurance carrier, Liberty Mutual, and reported the work accident and related
injuries.

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to the truth of

what Plaintiff observed and/or listened to and therefore denies same.  UPS admits that on or about

QBCHI\920018.00936\550135.1                    3

January 24 or 25, 2005, a work accident report was filled out and the incident was reported to Liberty

Mutual, UPS worker's compensation insurance carrier.

    12.    On January 25, 2005, Jose was examined by UPS' physician, Dr. Anthony Tesmond,
in connection with the injuries he sustained from the work accident.

**Answer:**    UPS denies that a Dr. Anthony Tesmond is a "UPS physician", but admits that

Plaintiff was examined by a Dr. Tesmond on or about January 25, 2005 in connection with his

claimed injuries.

    13.    Following the work accident, Jose missed work on January 25th and 26th.

**Answer:**    UPS denies that Plaintiff did not work for UPS on January 25 or 26, 2005.

    14.    Upon returning to work on January 27, 2005, Jose advised Dave Ziltz that he was still
experiencing back pain from the injuries he sustained from the work accident.

**Answer:**    UPS admits the allegations of Paragraph 14.

    15.    In January and February 2005, Jose was examined several additional times by Dr.
Tesmond and/or other physicians in his office in connection with the injuries he sustained from the
work accident.

**Answer:**    UPS is without knowledge or information sufficient to form a belief as to the truth of

who examined Plaintiff or whether he was examined "several times" in the stated time period and

therefore denies same.  UPS admits that Plaintiff was examined during the stated time frame.

    16.    Dr. Tesmond and/or his office notified UPS and/or its workers' compensation insurer
of each and every occasion that Jose received medical treatment in connection with the injuries he
sustained from the work accident.

**Answer:**    UPS is without knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 18 and therefore denies same.

QBCHI\920018.00936\550135.1                    4

17.     In February and early March 2005, Jose sought and received additional medical treatment from his own physicians in connection with the injuries he sustained from the work accident.

**Answer:**     UPS is without knowledge or information sufficient to form a belief as to whether

Plaintiff sought and received additional medical treatment and therefore denies same.  Answering

further, it is UPS's understanding that Plaintiff returned for treatment beginning February 10, 2005

after previously being released to full duty work.

18.     In February and early March 2005, Jose's physicians notified UPS and, in some instances, Jose's direct supervisors, of Jose's ongoing treatment for the injuries he sustained from the work accident, his prognosis and/or ability to return to work.

**Answer:**     UPS admits that on occasion after February 9, 2005, it received notes from physicians

concerning Plaintiff's condition.

19.     On or about February 9, 2005, Dave Ziltz met Jose while he was on his route delivering packages.  Upon his arrival at Jose's truck, Mr. Ziltz was angry and yelling at Jose.  Mr. Ziltz accused Jose of lying about the number of packages and/or stops he had left for the day in an earlier communication Jose had with the Addison facility.  Dave Ziltz told Jose he would be fired.

**Answer:**     UPS admits that Ziltz met Plaintiff while Plaintiff was on his route on February 9,

2005.  UPS denies the remaining allegations of Paragraph 19.  Answering further, in response to a

request for him to pick up a package, Plaintiff had contacted the UPS facility around 4:00 p.m. and

claimed he still had sixty stops to make and would not be done until 9:00 p.m.  Ziltz, who was

driving a route that day due to a shortage of drivers, arrived to assist Plaintiff at 4:42 p.m. and found

only about 20 packages on Plaintiff's vehicle.  Ziltz informed Plaintiff he was being placed on notice

of termination for dishonesty.

20.     On or about February 11, 2005, Jose informed his superiors that he could no longer perform his duties due to the pain he was experiencing from the work accident and related injuries.

He subsequently missed several days of work, and continued to receive medical treatment. He returned to work on or about February 17, 2005.

**Answer:**    UPS admits that Plaintiff informed his supervisors that he would not drive, that he

missed several days of work, and that he returned to work on or about February 17, 2005. UPS is

without knowledge or information sufficient to form a belief as to whether Plaintiff continued to

receive medical treatment and therefore denies same. UPS denies the remaining allegations of

Paragraph 20.

21.    On March 4, 2005, Jose's superior, Kerri Snyder, told Jose that his employment with UPS was terminated effective immediately for alleged (sic) being dishonest on February 9, 2005. Mr. Snyder then asked another supervisor who was present to escort Jose off of the premises.

**Answer:**    UPS admits the allegations Paragraph 21. Answering further, Plaintiff did not timely

submit a grievance pursuant to the applicable collective bargaining agreement challenging his

termination.

22.    At all relevant times, Jose's performance met or exceeded UPS' legitimate expectations. Jose was not dishonest on February 9, 2005, and did nothing to legitimately warrant the termination of his employment.

**Answer:**    UPS denies the allegations of Paragraph 22.

## UPS TERMINATED JOSE'S EMPLOYMENT IN RETALIATION FOR HIS PROTECTED ACTIVITIES IN VIOLATION OF THE ILLINOIS WORKERS' COMPENSATION ACT, COMMON LAW AND PUBLIC POLICY

23.    Jose's reporting the work accident and related injuries to UPS on January 24, 2005, and seeking medical treatment for such injuries commencing on January 25, 2006 (sic), and continuing through the day UPS terminated his employment (i.e., March 4, 2005), all as described above, are activities protected by the by the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.* (the "Act").

**Answer:**    The allegations of Paragraph 23 require legal conclusions and UPS therefore denies

same. UPS admits that reporting a work accident and related injuries and seeking medical treatment

for work-related injuries are activities protected by the by the Illinois Worker's Compensation Act,

820 ILCS 305/1 *et seq.*

24. UPS was aware of Jose's protected activities under the Act as described above at the time it decided to terminate his employment.

**Answer:** UPS was aware that Plaintiff had submitted a worker's compensation claim and was

receiving treatment at the time of his termination but denies that said claim or treatment played any

part in Plaintiff's termination.

25. Jose's protected activities under the Act were a motivating factor behind UPS' decision to terminate his employment.

**Answer:** UPS denies the allegations of Paragraph 25.

26. As such, UPS' termination of Jose's employment on March 4, 2005, was causally related to his protected activities under the Act.

**Answer:** UPS denies the allegations of Paragraph 26.

27. UPS's termination of Jose was therefore an illegal retaliatory discharge in contravention of Illinois public policy as stated and set forth in the Act.

**Answer:** UPS denies the allegations of Paragraph 27.

28. As a direct and proximate result of UPS' illegal termination of his employment, Jose has suffered a loss of income in the form of wages and prospective retirement benefits, social security and other employment benefits, emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

**Answer:** UPS denies the allegations of Paragraph 28.

29. The above described conduct by UPS was wilful and wanton, and with reckless disregard and indifference to the law and the public policy of Illinois, and to Jose's rights. UPS should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

**Answer:**    UPS denies the allegations of Paragraph 29.

## Affirmative Defense

Plaintiff is barred from recovery because he has failed to exercise reasonable efforts to

mitigate his alleged damages.

Dated: November 9, 2007                        UNITED PARCEL SERVICE, INC.

                                               By: /s/ D. Scott Watson
                                                        One of Its Attorneys

John A. Klages (ARDC #06196781)
D. Scott Watson (ARDC # 06230488)
Ellen M. Girard (ARDC #06276507)
Meghan E. Riley (ARDC #06288548)
Quarles & Brady LLP
500 West Madison, Suite 3700
Chicago, IL 60661
312/715-5000
312/715-5155 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 9, 2007, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> Timothy J. Coffey
> The Coffey Law Office, P.C.
> 1403 East Forest Avenue
> Wheaton, Illinois 60187
> Email: tcofflaw@sbcglobal.net

> /s/ D. Scott Watson

**Plaintiff's Exhibit 2**

**Defendant's Notice of Removal**



**FILED**

OCT 3 0 2007

*OCT. 30, 2007*
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*JH*

JOSE ANDREU,

      Plaintiff,

      v.

UNITED PARCEL SERVICE, INC.,

      Defendant.

**07CV6132**
**JUDGE DER YEGHIAYAN**
**MAG. JUDGE MASON**

)
)

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. Sections 1332(a), 1441(a) and (b) and 1446, Defendant United Parcel Service ("UPS") hereby removes the subject action from the Circuit Court of the Eighteenth Judicial District, County of DuPage, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division, on the following grounds:

1.    Plaintiff Jose Andreu ("Andreu") served UPS's attorney of record with a copy of the Complaint via U.S. Mail on or about October 18, 2007. A copy of the Complaint is attached hereto as Exhibit A. Andreu filed the Complaint in the Circuit Court of the Eighteenth Judicial District, County of DuPage, Illinois on or about October 15, 2007. No other process, pleadings or orders have been served on UPS in this matter.[1]

2.    Andreu's complaint alleges retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.*

---

[1] This matter was originally captioned Case No. 07 C 00473 in the U.S. District Court for the Northern District of Illinois and assigned to Judge Der-Yeghiayan and originally consisted of the ongoing Illinois state law worker's compensation retaliation matter and a dismissed federal claim brought pursuant to COBRA. On September 25, 2007, the Plaintiff sought leave to file an amended complaint without the COBRA claim and based on supplemental jurisdiction. On September 28, 2007, Judge Der-Yeghiayan declined to exercise supplemental jurisdiction over the remaining claim and dismissed the retaliation claim without prejudice. Plaintiff filed an agreed motion for reconsideration on October 1, 2007 stating that the matter should be retained on the basis of diversity jurisdiction. Judge Der-Yeghiayan denied the motion for reconsideration on October 10, 2007.

3.    This Court has original jurisdiction in this civil action pursuant to 28 U.S.C. § 1332(a).  UPS is entitled to remove this suit because of diversity of citizenship. Andreu is a citizen of the State of Illinois.  (Complaint ¶ 2).  UPS is an Ohio corporation (Complaint ¶ 3) with its home office in Atlanta, Georgia, therefore UPS is a citizen of Ohio and Georgia.

4.    The amount in controversy exceeds $75,000.00.  Plaintiff is seeking lost wages in his suit.  (Complaint p. 6).  During the pendency of this matter before Judge Der-Yeghiayan (as referenced in footnote 1), Plaintiff served UPS with his Rule 26(a)(1) Initial Disclosures dated April 27, 2007.  In his Initial Disclosures, Plaintiff stated he had lost and sought to recover approximately $95,000.00 in lost wages.  A true and accurate copy of Plaintiff's Rule 26(a)(1) Initial Disclosures is attached as Exhibit B.

5.    Removal to this Court is proper because the Northern District of Illinois embraces the Circuit Court of the Eighteenth Judicial District, County of DuPage, where this action was filed.

6.    Contemporaneous with the filing of this Notice of Removal, UPS has given the Circuit Court of the Eighteenth Judicial District, County of DuPage, Illinois written notice of same in the form attached to this Notice as Exhibit C.

WHEREFORE, Defendant United Parcel Service removes the subject action from the

Circuit Court of the Eighteenth Judicial District, County of DuPage, Illinois to this United States

District Court.

DATED:   October 30, 2007                          UNITED PARCEL SERVICE, INC.


                                                   By: _____
                                                        One of Its Attorneys


John A. Klages, #06196781
D. Scott Watson, #06230488
Gary R. Clark, #06271092
Ellen M. Girard, #06276507
Quarles & Brady LLP
500 West Madison Street, Suite 3700
Chicago, IL  60661-2511
312/715-5000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing

United Parcel Service's NOTICE OF REMOVAL to be served upon the below-listed counsel, by

U.S. mail, properly addressed and prepaid, and deposited in the U.S. Mail at 500 W. Madison

Street, Chicago, Illinois, before the hour of 5:00 p.m. this 30th day of October, 2007:

> Timothy J. Coffey
> The Coffey Law Office, P.C.
> 1403 East Forest Avenue
> Wheaton, Illinois 60187
> Email: tcofflaw@sbcglobal.net

D. Scott Watson

**Plaintiff's Exhibit 3**

**Defendant's Memorandum of Clarification of Principal Place of Business**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE ANDREU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 06132 |
| v. | ) |
| | ) Judge Der-Yeghiayan |
| UNITED PARCEL SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT UNITED PARCEL SERVICE'S
MEMORANDUM OF CLARIFICATION OF
UPS'S PRINCIPAL PLACE OF BUSINESS**

Defendant United Parcel Service ("UPS") submits this Memorandum of Clarification of

UPS's Principal Place of Business requested by this Court and states as follows:

On or about October 30, 2007, UPS filed its Notice of Removal of this action from the

Circuit Court of the Eighteenth Judicial District, County of DuPage, Illinois to this United States

District Court. In paragraph 3 of its Notice of Removal, UPS referred to itself as "an Ohio

corporation (Complaint ¶ 3) with its home office in Atlanta, Georgia, therefore UPS is a citizen

of Ohio and Georgia."

In recognition of the requirements of diversity jurisdiction recognized by the U.S. Court

of Appeals for the Seventh Circuit, UPS should have further identified Atlanta, Georgia as its

principal place of business and does so now.

WHEREFORE, Defendant United Parcel Service clarifies its previous filings by

affirmatively stating that its principal place of business is Atlanta, Georgia.

QBCHI\920018.00936\555098.1

DATED:  December 6, 2007                    UNITED PARCEL SERVICE, INC.


                                            By:    /s/ D. Scott Watson
                                                   One of Its Attorneys


John A. Klages, #06196781
D. Scott Watson, #06230488
Gary R. Clark, #06271092
Ellen M. Girard, #06276507
Quarles & Brady LLP
500 West Madison Street, Suite 3700
Chicago, IL  60661-2511
312/715-5000


## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on December 6, 2007, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                    Timothy J. Coffey
                    The Coffey Law Office, P.C.
                    1403 East Forest Avenue
                    Wheaton, Illinois  60187
                    Email: tcoffey@tcoffeelaw.net


                                        /s/ D. Scott Watson

**Plaintiff's Exhibit 4**

**Plaintiff's Deposition Transcript**

JOSE ANDREU, AUGUST 28, 2007
CONFIDENTIAL

---

**Page 1**

1       IN THE UNITED STATES DISTRICT COURT
2           NORTHERN DISTRICT OF ILLINOIS
3               EASTERN DIVISION
4   JOSE ANDREU,              )
5           Plaintiff,    )
6       -vs-                 ) No. 07 C 00473
7   UNITED PARCEL SERVICE, INC.,  )
8           Defendant.    )
9
10          The deposition of JOSE ANDREU, called for
11   examination, taken pursuant to the Federal Rules
12   of Civil Procedure of the United States District
13   Courts pertaining to the taking of depositions,
14   taken before ZONA B. MILLER, a Notary Public
15   within and for the County of Lake, State of
16   Illinois, and a Certified Shorthand Reporter of
17   said state, at Suite 3700, 500 West Madison
18   Street, Chicago, Illinois, on the 28th day of
19   August, A.D. 2007, at 10:00 a.m.
20
21
22
23
24

---

**Page 2**

1   PRESENT:
2       THE COFFEY LAW OFFICE, P.C.,
3       (1403 East Forest Avenue,
4       Wheaton, Illinois 60187,
5       630-534-6300), by:
6       MR. TIMOTHY J. COFFEY,
7           appeared on behalf of the Plaintiff;
8
9       QUARLES & BRADY,
10      (Citicorp Center,
11      500 West Madison Street, Suite 3700,
12      Chicago, Illinois 60661), by:
13      MR. D. SCOTT WATSON,
14          appeared on behalf of the Defendant.
15
16
17
18
19              COPY
20
21
22
23   REPORTED BY: ZONA B. MILLER, C.S.R.
24      CERTIFICATE NO. 84-0428.

---

**Page 3**

1          (WHEREUPON, the witness was duly
2       sworn.)
3       MR. WATSON: This is the deposition of
4   Jose Andreu taken pursuant to the Federal Rules of
5   Civil Procedure and in accordance with the notice
6   of deposition issued to counsel of record.
7               JOSE ANDREU,
8   called as a witness herein, having been first duly
9   sworn, was examined and testified as follows:
10              EXAMINATION
11   BY MR. WATSON:
12      Q.   Mr. Andreu, we have met. My name is
13   Scott Watson, the attorney for UPS. I'm going to
14   be asking you some questions today. And I always
15   like to start with some introductory questions
16   just to sort of set some ground rules for the
17   deposition.
18          Have you ever given a deposition
19   before?
20      A.   No.
21      Q.   I know you've seen several as part of
22   this case. But just so everything is clear to
23   you, will you wait until each question is
24   completed before you give your response, okay?

---

**Page 4**

1      A.   Okay.
2      Q.   And will you give your responses out
3   loud as opposed to a nod of the head or a shrug of
4   the shoulders or some other gesture?
5      A.   Okay.
6      Q.   And we'd like that because our court
7   reporter can't write a shake of the head, a shrug
8   of the shoulders.
9      A.   I understand.
10     Q.   Thank you. If your answer to a
11   question is yes or no, will you say yes or no as
12   opposed to uh-huh or uh-uh or something like that?
13     A.   Yes.
14     Q.   And again, it just makes it easier on
15   our court reporter.
16     A.   Okay.
17     Q.   If I ask a question or use words you
18   don't understand, will you let me know?
19     A.   Yes.
20     Q.   And I'll be glad to rephrase or restate
21   a question. But you do understand if you answer a
22   question, it's going to be assumed that you
23   understood the question. Do you understand that?
24     A.   Okay.

---

1 (Pages 1 to 4)

Page 9

1  there, if you remember?
2      A.   I remember moving in 1991, went to
3  Wells Fargo.
4      Q.   Wells Fargo, which branch or facility?
5      A.   It was right here on Madison. I can't
6  remember the address, but Racine and Madison,
7  right on the corner. And I was a driver guard.
8      Q.   You were what, sir?
9      A.   Driver guard.
10     Q.   Driver guard?
11     A.   Hm-hmm. Yes.
12     Q.   That started in 1991, you believe?
13     A.   Yes.
14     Q.   Until when?
15     A.   I was there 'til 2000, I think.
16     Q.   What was your next non-UPS position?
17     A.   Bedford Motors.
18     Q.   What did you do at Bedford Motors, sir?
19     A.   I was a truck driver.
20     Q.   And you worked at Bedford Motors from
21  when to when?
22     A.   'Til '03.
23     Q.   Did you start there in 2000 when you
24  left Wells Fargo?

Page 10

1      A.   Not right away.
2      Q.   Were either of the positions at Wells
3  Fargo or Bedford Motors, were they unionized
4  positions?
5      A.   No.
6      Q.   After Bedford Motors, sir, what was
7  your next non-UPS position?
8      A.   That's it.
9      Q.   That's it?
10     MR. WATSON: I'll ask this be marked Andreu
11  Exhibit 1.
12         (WHEREUPON, a certain document was
13         marked Andreu Deposition Exhibit No.
14         1, for identification, as of
15         8/28/07.)
16  BY MR. WATSON:
17     Q.   I'll ask you to take a look at that.
18  And my first question simply is going to be do you
19  recognize it?
20     A.   Yes.
21     Q.   What is this document, sir?
22     A.   I don't know how to describe.
23     Q.   Let me just, hopefully, make it simple.
24  Is this the complaint that was filed by you and

Page 11

1  your attorney to initiate this action?
2      A.   Yes.
3      Q.   Did you review this with your attorney
4  before responding to the court?
5      A.   Yes.
6      Q.   If I could ask you to turn to the
7  second page in Paragraph 7, according to Paragraph
8  7 of your complaint, you began working for UPS in
9  1996, is that correct?
10     A.   Yes.
11     Q.   Kind of as we did a moment ago with the
12  positions you had outside of UPS, I'd like to ask
13  you about the different positions you had within
14  UPS from 1996 until your termination in 2005.
15  What was your first job with UPS?
16     A.   Loading --
17     Q.   Were you --
18     A.   -- on the air dock.
19     Q.   Was that a part-time position, sir?
20     A.   Yes.
21     Q.   And was it a unionized position? Were
22  you a member of Teamsters Local 705?
23     A.   Yes.
24     Q.   And how long were you a loader on the

Page 12

1  air dock, sir?
2      A.   Two months.
3      Q.   What was your next position?
4      A.   Air driver.
5      Q.   Was that also a part-time position?
6      A.   Yes.
7      Q.   And that was also a unionized position,
8  correct?
9      A.   Yes.
10     Q.   And how long were you an air driver?
11     A.   'Til I went full time in '03.
12     Q.   So from sometime in 1996 until '03,
13  approximately seven years?
14     A.   Yes.
15     Q.   What did you do as an air driver?
16     A.   Delivery of package early morning.
17     Q.   When you say you were an air driver and
18  delivered early morning, were these the next-day
19  air packages that UPS delivers?
20     A.   Yes.
21     Q.   You said a moment ago that you became
22  full time in 2003. In what position, sir?
23     A.   Package car driver.
24     Q.   And was that the position you had

3 (Pages 9 to 12)

Page 49

1    when Mr. Mendez was injured?
2        A.  No.
3        Q.  Do you remember how Mr. Mendez was
4    injured?
5        A.  No.
6        Q.  Do you remember if Mr. Mendez was
7    working at UPS in March of 2005?
8        A.  Yes.
9        Q.  Did you see him at work around that
10   time?
11       A.  Yes.
12       Q.  Had he been injured prior to that?
13       A.  Yes.
14       Q.  When he was injured, did he actually
15   miss work?
16       A.  I don't know.
17       Q.  I think I asked this, but I can't
18   remember for sure.  Do you remember how Mr. Mendez
19   injured himself?
20       A.  No, I don't.
21       Q.  Back to your complaint for a moment,
22   Mr. Andreu.  You claim in Paragraph 9 of your
23   complaint that you injured your back on
24   January 24 -- I'll start over.

Page 50

1        You claim in Paragraph 9 of your
2    complaint that you injured your back on
3    January 24, 2005, is that correct?
4        A.  Yes.
5        Q.  I'd like to go through that day, if we
6    could.  Do you remember what time you arrived at
7    work that day?
8        A.  Around 7:30.
9        Q.  And was that your regular arrival
10   time?
11       A.  Yes.
12       Q.  And were you assigned a route that day?
13       A.  Yes.
14       Q.  Do you remember who told you what route
15   you were assigned?
16       A.  Mr. Dave Ziltz.
17       Q.  Mr. Dave Ziltz?
18       A.  Yes.
19       Q.  Do you remember what route you were
20   assigned to?
21       A.  They call it Geneva route.
22       Q.  Could you briefly describe that route?
23       A.  That is part of the Geneva, South
24   Geneva.  And I was on my way, halfway there, when

Page 51

1    I got the message saying that pull over and wait
2    because I was going to get transferred to Route
3    59.
4        Q.  Okay.  So you were told initially you
5    were going to go the Geneva route?
6        A.  In the morning.
7        Q.  You prepared for that route.  You set
8    up the next-day airs, that kind of thing?
9        A.  Yes.
10       Q.  And you were driving towards the route
11   when you got the message to pull over and wait,
12   you were being transferred to another route?
13       A.  Yes.
14       Q.  Who contacted you and told you to pull
15   over?
16       A.  I don't know.
17       Q.  How did you get the message?
18       A.  Through the DIAD board.
19       Q.  Now, I'd asked you a moment ago to
20   describe the Geneva route.  And I think you said
21   it was part of South Geneva.  Was it an industrial
22   route, a residential route, a combination?
23       A.  Combination.
24       Q.  Combination of what, sir?

Page 52

1        A.  Industrial route and residential.
2        Q.  And you indicated that you were pulled
3    over and told you were being transferred to Route
4    59.  Route 59, could you describe that for us?
5        A.  Route 59, that's the west and south
6    of -- I'm sorry, east side of Aurora and south.
7        Q.  Do you know why this route change
8    occurred?
9        A.  I don't know.
10       Q.  So you pull over.  What happens?
11       A.  I pull over and wait for the other
12   driver to arrive with Route 59 truck.  We switch
13   trucks and I went on.
14       Q.  Did you give this other driver your
15   truck and he took yours?
16       A.  Yes.
17       Q.  You took yours, he took yours?
18       A.  Yes.
19       Q.  You exchanged trucks.  Who was the
20   other driver?
21       A.  I believe his name is Murio Montgomery.
22       Q.  Montgomery?
23       A.  Yes.  M-u-r-i-o.
24       Q.  I'd like to take you back a little bit,

Page 57

1    Q.   Were you standing on the ground or were
2  you standing on part of the vehicle?
3    A.   On the ground.
4    Q.   And thank you, sir. I just wanted to
5  make sure we had that information.
6        You indicated that you called in to the
7  center and were told to wait for a supervisor,
8  correct?
9    A.   They said, "Make the airs and then
10  we'll" -- "call us back. Let us know where you
11  are so you can meet the supervisor."
12    Q.   Let's, again, maybe back up just a
13  moment. If you would look at paragraph 10 of your
14  complaint. Do you see where I'm referring to,
15  sir? Paragraph 10. Paragraph 10 reads:
16        "He immediately called into UPS and
17  reported the work accident and his resulting back
18  injuries."
19        Is that correct?
20    A.   Yes.
21    Q.   I'll just kind of step back to this.
22  Did you do that? Did you call UPS immediately?
23    A.   Yes.
24    Q.   Who did you call?

Page 58

1    A.   I don't remember who I talked to.
2    Q.   Did you call a direct number or general
3  number? Strike that.
4        Did you call the Aurora Center?
5    A.   Yes.
6    Q.   And you don't remember who you spoke
7  to?
8    A.   I believe her name is Amanda.
9    Q.   Do you remember Amanda's position?
10    A.   No.
11    Q.   How did you call in, sir? Did you call
12  in from a phone booth, did you go to somebody's
13  house, a cell phone?
14    A.   A phone.
15    Q.   Excuse me, sir?
16    A.   A phone.
17    Q.   A phone?
18    A.   Yes.
19    Q.   But --
20    A.   My cell phone.
21    Q.   Your cell phone. Okay.
22    A.   Yes.
23    Q.   Do you remember what time of morning
24  this was? And I'm assuming it was morning, since

Page 59

1  it was your first stop.
2    A.   I don't remember exactly.
3    Q.   Now, I bring you back to where you were
4  a moment ago. You believe you spoke to Amanda?
5    A.   Yes.
6    Q.   And I may not have asked this. Do you
7  know what Amanda's position was with UPS?
8    A.   I don't know.
9    Q.   And I apologize. I couldn't remember
10  if I asked you.
11        What did you say to her and what did
12  she say to you?
13    A.   I told her exactly what I just said.
14    Q.   As in you described what happened as
15  you described it to us today?
16    A.   Yes.
17    Q.   And did she respond?
18    A.   Yes.
19    Q.   And how did she respond?
20    A.   She said, "Do the airs and call us back
21  so the supervisor can meet you."
22    Q.   So she told you to do the air packages?
23    A.   Yes.
24    Q.   How many air packages did you have that

Page 60

1  morning, if you remember?
2    A.   I don't remember.
3    Q.   Did you respond to her when she told
4  you to do the airs and call us back?
5    A.   I was talking to her on the phone.
6    Q.   I understand that. What did you say to
7  her?
8    A.   I did what she told me to do.
9    Q.   But did you say anything else to her
10  after she told you to do the airs and call them
11  back?
12    A.   Don't remember.
13    Q.   Do you remember anything else about the
14  conversation, either anything else you said or
15  anything else that this person Amanda may have
16  said?
17    A.   No.
18    Q.   So I think you've already indicated you
19  then went and did the airs, correct?
20    A.   Right.
21    Q.   Any idea of how long that took you?
22    A.   I don't remember exactly.
23    Q.   When you completed the airs, did you
24  call back in to the center?

Page 125

1    Q.   And below that it says Time In: 7:39,
2    and Time Out: 7:55. If you recall, would that
3    have been in the morning or in the evening?
4    A.   I believe it was morning time.
5    Q.   Under Disability Status, again, as in
6    the document we looked at earlier, none is X'd, is
7    marked, is that correct?
8    A.   Yes.
9    Q.   Under Diagnosis, this gets a little
10   tougher with doctor writing, but I believe that
11   says lumbosacral strain, if you have any idea.
12   A.   No idea.
13   Q.   As you look at this doctor's note and
14   as you also recall the visit, do you recall being
15   given any restrictions on this date as with regard
16   to your ability to work?
17   A.   No, no restrictions.
18   Q.   Sir, looking back at your complaint
19   that we've been going through, would you look at
20   Paragraph 22, and this is on page 4, sir, it says
21   on or about February 11, 2005, you informed your
22   superiors you could no longer perform your duties
23   due to the pain you were experiencing. Is that
24   what it says? And, again, I was paraphrasing.

Page 126

1    A.   Yes.
2    Q.   Who did you inform?
3    A.   Mr. Kerri Snyder.
4    Q.   At the time you informed Mr. Snyder,
5    did you have something from a doctor saying that
6    you couldn't work?
7    A.   No.
8    Q.   And according to the last two sentences
9    of Paragraph 22 of the complaint you missed
10   several days of work, and continued to receive
11   medical treatment, and returned to work on or
12   about February 17th, is that correct?
13   A.   Yes.
14   Q.   Now, when you returned to work on
15   February 17th, did you return as a package car
16   driver?
17   A.   I believe I was placed on light duty at
18   that time.
19   Q.   Did you hear the term "TAW" or
20   "temporary alternative work" used?
21   A.   No.
22   Q.   Have you ever heard those terms before
23   with regard to --
24   A.   I don't remember.

Page 127

1    Q.   So what was your light duty? What did
2    you do?
3    A.   They have me scanning about thousand
4    packages in the morning --
5    THE COURT REPORTER: I'm sorry. Could you
6    repeat your answer?
7    BY THE WITNESS:
8    A.   I was light duty. I was doing scanning
9    packages on the trucks and answering the phone.
10   BY MR. WATSON:
11   Q.   Anything else?
12   A.   Not that I remember.
13   Q.   Do you recall, were you working eight
14   hours a day?
15   A.   Yes.
16   Q.   And you said you were scanning, I think
17   you initially said scanning about a thousand
18   packages. How would you scan a package?
19   A.   Mr. Kerri Snyder -- I'm sorry.
20   Jim Prunet, it was early supervisor, and he will
21   tell me what trucks I go and scan packages with
22   the scanner.
23   Q.   What's the scanner? What's it look
24   like? How big is it? If you could just describe

Page 128

1    it briefly.
2    A.   Scanner is very small. You put it in
3    your -- I don't know if they have those or not.
4    You put it in your hand and you just press a
5    button and you scan the package.
6    Q.   It's scanned --
7    A.   It has a laser and it scans the bar
8    code.
9    Q.   It scans the bar code on the package
10   using a laser?
11   A.   Yes.
12   Q.   And it's something you would hold in
13   your hand essentially?
14   A.   Yes.
15   Q.   So was that your light-duty work,
16   scanning packages, answering the phones? Anything
17   else?
18   A.   Not that I remember right now.
19   Q.   You say Jim Prunet would be the one to
20   tell you what trucks to scan?
21   A.   Yes.
22   Q.   And I think you called him the early
23   supervisor. Would he also be referred to as the
24   preload supervisor, if you know?

32 (Pages 125 to 128)

Page 149

1    A.   I don't remember.
2    Q.   Mr. Andreu, if I could ask you a couple
3  of more questions about your interrogatories. If
4  you turn to page 12 and 13, please, sir,
5  Interrogatory No. 14.
6         Interrogatory 14 asks you to describe
7  in detail any physical, mental or emotional
8  injuries you claim to have suffered as a result of
9  the conduct alleged in your charge -- it should be
10 complaint -- in this case. And your response is
11 on page 13. Do you see where the answer is, sir?
12   A.   Yes.
13   Q.   And in your answer you indicate that
14 you suffered from a variety of emotional injuries
15 and pain, including but not limited to, worry,
16 embarrassment, depression, fear, betrayal,
17 harassment, anger, anxiety, loss of self-esteem/
18 self-worth, financial stress, family discord,
19 sleeplessness and headaches. Do you see the list
20 of things I've just read off?
21   A.   Yes.
22   Q.   Did you have to -- let me strike that.
23        Did you receive any medical
24 attention --

Page 150

1    A.   No, I didn't.
2    Q.   -- for -- okay. For any of these
3  things listed?
4    A.   No.
5    Q.   You didn't see a psychiatrist or
6  psychologist or counselor about any of these
7  items?
8    A.   No.
9    Q.   When you say sleeplessness, how did
10 that manifest itself? Was it just hard to get to
11 sleep at night? Were you up all night?
12   A.   Sometimes up all night, having
13 nightmares; like waking up. I can hear Mr. Ziltz'
14 voice screaming at me.
15   Q.   How many times did that happen?
16   A.   A lot.
17   Q.   What's "a lot"?
18   A.   A lot of times. Every time I remember
19 I get a stomachache.
20   Q.   You didn't list stomachache as one of
21 your items here, is that correct?
22   A.   No, I did not.
23   Q.   And you didn't receive any treatment
24 for a stomachache or for sleeplessness or anything

Page 151

1  along those lines, correct?
2    A.   No.
3    Q.   Did you take any medication for
4  sleeplessness?
5    A.   No, sir.
6    Q.   Interrogatory No. 15 was the next one
7  down on page 13, and the answer is on page 14.
8         Interrogatory 15 asked you about other
9  employers since October of 2001. And earlier
10 today you told us about the Bedford Motor Service,
11 Inc. Right there in the middle of the page you
12 say you've been employed since October 2005 with
13 J & J Tee Service Company, and that you are the
14 president and part owner, and that as of today
15 that company has not paid salaries or wages. What
16 is J & J Tee Service?
17   A.   Tree services.
18   Q.   As in tree trimming, that kind of
19 thing?
20   A.   Yes.
21   Q.   Have you worked for J & J -- should
22 that be J & J Tree Service instead of Tee Service?
23   A.   Yes.
24   Q.   I thought it was a T-shirt company when

Page 152

1  I first read it.
2         So have you worked as a tree trimmer
3  for J & J Tree Service?
4    A.   As July '06.
5    Q.   Excuse me, sir?
6    A.   As July '06, I work full time.
7    Q.   Since July '06 you've worked full time?
8    A.   Yes.
9    Q.   Does J & J Tree Service Company have
10 any other employees other than yourself?
11   A.   My brother.
12   Q.   What's your brother's name?
13   A.   He's name is Jorge L. Andreu.
14   Q.   Jorge, J-o-r-g-e?
15   A.   Yes.
16   Q.   And you have worked full time for them
17 for the last 13 months?
18   A.   Since July '06.
19   Q.   Do you have -- does J & J Tree Service
20 Company have contracts with individuals for
21 regular trimming or is it --
22   A.   Yes.
23   Q.   Who do you have contracts with?
24   A.   Um, with, um, private owners. If you

38 (Pages 149 to 152)

Page 153

1   need a tree trimmer, you call J & J. We go up
2   there and we sign the contract with you.
3       Q.   So individuals. Do you have any
4   contracts with businesses?
5       A.   No.
6       Q.   So just individuals, residential?
7       A.   Yes.
8       Q.   Does J & J Tree Service send these
9   people a bill?
10      A.   Either that or they pay when the job is
11  completed.
12      Q.   And does the price of job vary with
13  what the services are?
14      A.   Yes.
15      Q.   Give us a rundown of what kind of
16  services and what kind of expenses J & J Tree
17  Service offers and for how much those services are
18  charged out.
19      A.   It varies a lot. If you need a tree
20  plant, it depends on the size of the tree. It can
21  go from $300 to $1,500.
22      Q.   Is that for a tree to be planted, did
23  you say?
24      A.   Yes.

Page 154

1       Q.   What other kinds of services, and the
2   charges for those, please?
3       A.   Trimming. It varies, too, on the --
4   you know, how many bushes in the area. It varies.
5       Q.   From a low end to a high end, what
6   would the trimming be?
7       A.   From $800 to what -- 3,000, $4,000.
8       Q.   Any other services?
9       A.   Tree removal.
10      Q.   And how much does that cost?
11      A.   Small trees -- we do small trees, 5,
12  $600.
13      Q.   Big trees?
14      A.   We don't do them.
15      Q.   So you never charged over $600 to
16  remove a tree?
17      A.   Yes. A thousand dollars.
18      Q.   You charged up to a thousand?
19           Any other services that J & J Tree
20  Service offers?
21      A.   No.
22      Q.   Does J & J Tree Service have a
23  location?
24      A.   Yes. It has two address. My brother's

Page 155

1   address and my address.
2       Q.   So just home addresses?
3       A.   Yes.
4       Q.   Is there any property in the name of
5   the company?
6       A.   No.
7       Q.   Has J & J Tree Service Company been
8   formally incorporated?
9       A.   Yes.
10      Q.   With documents filed with the Secretary
11  of State and that kind of thing?
12      A.   Yes.
13      Q.   Does J & J Tree Service pay taxes?
14      A.   Yes.
15      Q.   Now, it says, "To date, the company has
16  not paid salaries or wages to Plaintiff."
17           Have you received any income from J & J
18  Tree Service, whether or not you consider it a
19  salary or wages?
20      A.   Yes. Last year, I receive $15,000.
21      Q.   And how was that determined?
22      A.   Base on the work that I did.
23      Q.   What did your brother receive?
24      A.   I'm not sure. 27 or so.

Page 156

1       Q.   27,000?
2       A.   I think so. Around 27.
3           I got to go to the bathroom. I'm
4   sorry.
5       MR. WATSON: Actually, this is a good time.
6   If we could take a couple-of-minute break, I'll go
7   through things and see if there's any additional
8   questions.
9           (WHEREUPON, a recess was had.)
10  BY MR. WATSON:
11      Q.   Mr. Andreu, I'm going to show you what
12  we'll mark as Exhibit 14.
13           (WHEREUPON, a certain document was
14           marked Andreu Deposition
15           Exhibit No. 14, for
16           identification, as of 8/28/07.)
17  BY MR. WATSON:
18      Q.   Do you recognize this, sir?
19      A.   Yes.
20      Q.   I believe you indicated that's part of
21  your earlier testimony that you were released by
22  your doctors to work full duty without
23  restrictions in October of 2005. Is this, in
24  fact, that release, sir?

39 (Pages 153 to 156)

Page 157

1   A.   Yes.
2   Q.   And it's dated on the top right-hand
3   corner of the -- it looks like a note that was
4   copied October 20, 2005?
5   A.   Yes.
6   Q.   Does that sound about right?
7   A.   Yes.
8   Q.   Mr. Andreu, you did, in fact, file with
9   regard to your January 24, 2005 injury a worker's
10  compensation claim, correct?
11  A.   Yes.
12  Q.   And did you, in fact, receive worker's
13  compensation benefits?
14  A.   Yes.
15  MR. WATSON:  This is Andreu 15.
16       (WHEREUPON, a certain document was
17       marked Andreu Deposition
18       Exhibit No. 15, for
19       identification, as of 8/28/07.)
20  BY MR. WATSON:
21  Q.   Mr. Andreu, you also filed at some
22  point a claim for unemployment insurance, correct?
23  A.   Yes.
24  Q.   When did you file that, sir?

Page 158

1   A.   It was in '06.
2   Q.   You filed for unemployment in '06?
3   A.   I don't remember exactly.
4   Q.   Is it possible you filed for
5   unemployment in '05?
6   A.   I'm not sure.
7   Q.   The document I've handed you, sir, it
8   states it's the State of Illinois Department of
9   Employment Security Work Search Record.  Do you
10  see that title at the top?
11  A.   Yes.
12  Q.   And what is this?  What information
13  does this contain?
14  A.   Information over here that I wrote down
15  the jobs I was calling and looking for.
16  Q.   Was this at the direction of the
17  Department of Unemployment Insurance -- or excuse
18  me -- the Department of Unemployment Security?  I
19  apologize.
20  A.   Yes.
21  Q.   Now, you hadn't worked at UPS since
22  March of 2005, correct?
23  A.   Yes.
24  Q.   Had you -- and you were released to

Page 159

1   full-duty work in October of 2005, as we looked at
2   in the note just a moment ago, Exhibit 14,
3   correct?
4   A.   Yes.
5   Q.   Had you looked for work prior to
6   January 20, 2006?
7   A.   No.
8   Q.   One last question, Mr. Andreu.  Did you
9   ever consider filing a lawsuit against Local 705
10  with regard to your termination from UPS?
11  A.   I don't know.
12  Q.   You don't know if you ever considered
13  it?
14  A.   I haven't considered it.
15  MR. WATSON:  I have no further questions.
16  MR. COFFEY:  I have a couple of questions, if
17  I may.
18       EXAMINATION
19  BY MR. COFFEY:
20  Q.   Let me pick up right where we left off,
21  Mr. Andreu, Exhibit 15, your work search record.
22  Now, the first entry here on January 20, 2006.  Do
23  you see that?
24  A.   Yes.

Page 160

1   Q.   You're released from work, as we saw,
2   October 2005, several months before that, correct?
3   A.   Yes.
4   Q.   Did you make any calls or do anything
5   to try to find work after you were released in
6   October 2005?
7   A.   Yes.
8   Q.   What did you do, and when did you do
9   it?
10  A.   I was home with the kids because we let
11  the babysitter go, and I was making phone calls
12  and -- look through the paper and make phone
13  calls.
14  Q.   And what period of time is this that
15  you're looking through the paper and making phone
16  calls?
17  A.   During the day.
18  Q.   What month?  You're released from work
19  in October 2005.  Is this after October 2005?
20  A.   Yes.
21  Q.   Did you do anything in November 2005 to
22  try to find work?
23  A.   Yes.
24  Q.   What did you do?

40 (Pages 157 to 160)

Page 161

1    A.   I call my cousin Vincente.  He has a
2  couple of trucks.  And he told me that he needed
3  driver, but I didn't have the -- that CDL Class A
4  to drive one of his trucks.  And then I tried to
5  go to the State and operate my license, but I
6  need -- they told me that I need to go to school,
7  to go to school for driving the big trucks.  And I
8  went and called the school, and they wanted around
9  $4,000 for the training.  And at that time, there
10  was no money.
11    Q.   This is November '05?
12    A.   Yes.
13    Q.   Anything else during the months of
14  November, December prior to this entry here,
15  January 20, '06, that you did to try to find work?
16    A.   Same thing.  I did call the -- I did
17  call a lot of places to -- I was looking in the --
18  in that -- the paper.
19    Q.   And you were making calls based on what
20  you're finding in the paper?
21    A.   Yes.
22    Q.   How many calls would you say you made
23  in that time period, November, December and
24  January 2006, before your January 20th entry here?

Page 162

1    A.   At least three, four a day.
2    Q.   Okay.  And you were unable to find
3  work, I take it, during that time period?
4    A.   Yes.
5    Q.   I think there was a question about
6  J & J Tree Service along the lines of is there any
7  property in the name of the company.  And I'm not
8  sure -- does J & J Tree Service use equipment for
9  their jobs?
10    A.   Yes.
11    Q.   And J & J Tree Service Company owns the
12  equipment, I take it?
13    A.   Yes.
14    Q.   So that property will be in the name of
15  the company, correct?
16    A.   Yes.
17    Q.   Just there's no office, so to speak?
18    A.   No, there's no land.
19    Q.   You were asked if you had anything else
20  that supported your belief that a grievance was
21  filed on your behalf by Local 705, and then you
22  gave some testimony that you went and appeared
23  before a panel about the grievance, correct?
24    A.   Yes.

Page 163

1    Q.   That's your understanding of why you
2  appeared before that panel was because of the
3  grievance, right?
4    A.   Yes.
5    Q.   So does that appearance in March of
6  '06, does that support your belief that a
7  grievance was filed?
8    A.   Yes.
9    Q.   Way back in the start of the deposition
10  we were talking about -- the question was asked
11  whether there was any medication that affected
12  your ability to remember and whether you were
13  taking any medication in 2005 that affected your
14  ability to remember the events of 2005.  And I
15  think you started talking about -- I mean, we've
16  seen you've been on Advil.  That is what the
17  doctor at the clinic was prescribing for you,
18  correct?
19    A.   Right.
20    Q.   Let me just ask you:  Was there any
21  medication that you've taken since 2005 up to
22  today that has affected your ability to remember?
23    A.   No.
24    Q.   So as far as you know, your ability to

Page 164

1  remember the events and all the testimony that
2  you've given today is unaffected by any
3  medication, right?
4    A.   Yes.
5    Q.   You gave some testimony about a
6  supervisor by the name of Ginger.  Was that in the
7  Aurora Center or in the Air Center?
8    A.   In the Air Center.
9    Q.   With respect to medical restrictions,
10  at some point in time you were placed on work
11  restrictions by your doctor, correct?
12    A.   Yes.
13    Q.   And that was in February of '05 when
14  you came back and then you were put on light duty
15  and working light duty?
16    A.   Yes.
17    Q.   Do you know what those work
18  restrictions were?
19    A.   Lifting and sitting.
20    Q.   Do you know how long the sitting
21  duration was or the amount of lifting in terms of
22  pounds; if you know?
23    A.   Not sitting longer than 20 minutes or
24  lifting more than 20 pounds.

41 (Pages 161 to 164)

Page 165

1    Q.   I think earlier you said sitting 20
2    minutes and not lifting more than 5 pounds.  Do
3    you know what the lifting restrictions are or are
4    you uncertain?
5    A.   At first, it was five pounds, and later
6    it was 20 pounds.
7    Q.   Well, you gave -- whatever these
8    restrictions were, you got copies of them from the
9    doctor.  And did you give those to your -- when
10   you were still working at UPS, did you give those
11   to your supervisors?
12   A.   Yes.
13   Q.   And these restrictions are right,
14   correct?
15   A.   Yes.
16   Q.   And you believe you've turned over the
17   copies of those restrictions to UPS in this case
18   as they've requested?
19   A.   Yes.
20   Q.   So whatever the restrictions are in
21   writing --
22   A.   Yes.
23   Q.   -- that's -- whatever the doctors have
24   written on those notes, those are your

Page 166

1    restrictions, right?
2    A.   Yes.
3    Q.   You were also asked about any basis for
4    your belief that it was 3:00 when these
5    communications started on February 9th of 2005.
6    Let me ask you, the DIAD board that you used for
7    delivering packages, does that have a readout of
8    what time it is?
9    A.   Yes.
10   Q.   And when you're delivering packages
11   throughout the day, particularly on February 9th,
12   2005, you record each delivery on the DIAD board,
13   right?
14   A.   Yes.
15   Q.   And when you record that on the DIAD
16   board, you're looking at the time as read out on
17   the DIAD board, right?
18   A.   Yes.
19   Q.   And when you have said in this case
20   that you believe it's about 3:00 when these
21   communications start, that partially based on
22   your recollection of the DIAD board and the time
23   that is reflected on your DIAD board?
24   A.   Yes.

Page 167

1    Q.   Same thing with the other time you gave
2    about meeting Mr. Ziltz about 4:45.  Again, during
3    the day, as you're making deliveries, you're
4    referring to the DIAD board, using the DIAD board,
5    and the DIAD board has the time on it, correct?
6    A.   Yes.
7    Q.   So every time you're making a delivery,
8    you're looking at the time.
9    A.   Yes.
10   Q.   Just as if you're looking at a watch,
11   correct?
12   A.   Yes.
13   Q.   And that experience on February 9th
14   is -- your estimations of these times in this case
15   are based on what you recollect from the DIAD
16   board readout and the time that is shown on the
17   DIAD board, correct?
18   A.   Yes.
19   Q.   You were shown copies of the two
20   handwritten notes that you have stated you gave to
21   Pam Treadwell.  Let me just try to get the --
22       MR. WATSON:  Exhibit 6 and 8, I think.
23       MR. COFFEY:  Sounds right.
24   BY MR. COFFEY:

Page 168

1    Q.   Exhibit 6 and 8, do you recall the
2    testimony you gave on those Exhibits 6 and 8?  Do
3    you recall getting some questions that asked about
4    Exhibits 6 and 8?  Correct?
5    A.   Yes.
6    Q.   I think you were uncertain as to when
7    you gave these to Miss Treadwell.  Would it be
8    safe to say that you gave them to her prior to you
9    being terminated?
10   A.   Yes.
11   Q.   So sometime before March 4th?
12   A.   Yes.
13       MR. COFFEY:  I don't have anything else.
14       FURTHER EXAMINATION
15   BY MR. WATSON:
16   Q.   Mr. Andreu, you said that J & J Tree
17   Service Company owns equipment.  What kind of
18   equipment does it own?
19   A.   Four trucks, a bucket, a chipper and a
20   stump grinder, two trailers, chain saws.
21   Q.   Anything else?  I mean, is it -- other
22   than hand tools, that kind of thing?  Do you have
23   any power equipment, anything like that?
24   A.   No.

42 (Pages 165 to 168)

## Page 169

1    Q.   Was this equipment purchased since the
2  beginning of the company or did you have it prior
3  to?
4    A.   What there was purchased, one truck and
5  one machine at the beginning of -- yeah.
6    Q.   When you --
7    A.   When we started the company.
8    Q.   Okay.  When you started the company,
9  you purchased one truck and one machine?
10   A.   Yes.
11   Q.   What kind of machine?
12   A.   It's called a chipper.
13   Q.   And the other equipment has been
14  purchased subsequently?
15   A.   Little by little.  One at a time.  I'm
16  sorry.
17   Q.   Your counsel asked you questions about
18  the DIAD board at times and how those times on the
19  DIAD board influenced your recollections.  But all
20  you have are those recollections, correct?  You
21  don't have any memos or anything from that time
22  that states you got that first contact from UPS at
23  3:00 p.m., is that correct?
24   A.   Correct.

## Page 170

1    MR. WATSON:  Nothing further.
2    MR. COFFEY:  Nothing further from me.
3    MR. WATSON:  Are you reserving signature?
4    MR. COFFEY:  I'll reserve signature.
5        FURTHER DEPONENT SAITH NOT.

## Page 171

1      IN THE UNITED STATES DISTRICT COURT
2        NORTHERN DISTRICT OF ILLINOIS
3            EASTERN DIVISION
4  JOSE ANDREU,        )
5      Plaintiff,   )
6   vs.         )No. 07 C 00473
7  UNITED PARCEL SERVICE  )
8      Defendant.  )
9      I hereby certify that I have read the
10  foregoing transcript of my deposition given at the
11  time and place aforesaid, consisting of Pages 1 to
12  170, inclusive, and I do again subscribe and make
13  oath that the same is a true, correct and complete
14  transcript of my deposition so given as aforesaid,
15  and includes changes, if any, so made by me.
16
17        JOSE ANDREU
18
19
20  SUBSCRIBED AND SWORN TO
21  before me this      day
22  of       , A.D. 200 .
23
24    Notary Public

## Page 172

1  STATE OF ILLINOIS  )
2            ) SS:
3  COUNTY OF L A K E  )
4      I, ZONA B. MILLER, a Notary Public within
5  and for the County of Lake, State of Illinois, and
6  a Certified Shorthand Reporter of said state, do
7  hereby certify:
8        That previous to the commencement of
9  the examination of the witness, the witness was
10  duly sworn to testify the whole truth concerning
11  the matters herein;
12        That the foregoing deposition
13  transcript was reported stenographically by me,
14  was thereafter reduced to typewriting under my
15  personal direction and constitutes a true record
16  of the testimony given and the proceedings had;
17        That the said deposition was taken
18  before me at the time and place specified;
19        That I am not a relative or employee or
20  attorney or counsel, nor a relative or employee of
21  such attorney or counsel for any of the parties
22  hereto, nor interested directly or indirectly in
23  the outcome of this action.
24      IN WITNESS WHEREOF, I do hereunto set

ESQUIRE DEPOSITION SERVICES - CHICAGO
312.782.8087  800.708.8087  FAX: 312.704.4950

**STATE OF ILLINOIS**
**DEPARTMENT OF EMPLOYMENT SECURITY**
**WORK SEARCH RECORD**

SOCIAL SECURITY NO. 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    CLIENT'S SIGNATURE _José Centeno_

Use the table below to keep a record of all the employers and labor unions you contact while filing for Unemployment Insurance benefits. You must maintain your work search information on the form provided by IDES on a weekly basis. You will be required to produce your work search upon request. Failure to do so may result in denial of benefits. Be sure to bring your work search record with you if you come into the local office. If you need additional pages to record your work search, contact your local office or duplicate this form.

**IMPORTANT NOTICE: KEEPING YOUR WORK SEARCH RECORDS**
A determination that you were actively seeking work during a week being claimed is subject to reconsideration. (The determination may be reconsidered despite the fact that you have been paid benefits or returned to work since then.) In order to preserve evidence that you were actively seeking work, do not discard your written work search record for any week being claimed until 53 weeks have passed from the end of that week. Further, if there is an appeal pending regarding your active work search for a week, keep your written work search record until there has been a final resolution of the matter.

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| 01/20/06 | Bedford Motors O'Hare | Tony | Person | Driver Forklift | NO |
| 01/23/06 | REM Trucking 600 Thomas Bensenville | Unknown Front Desk | Person | Truck Driver | NO |
| 01/24/06 | Fed Ex La Grange IL | John | Person | Package Delivery | NO |
| 01/27/06 | Milan Express Co 5757 Lawndale | Mike | Person | Truck Driver | NO |
| 01/31/06 | CR England | Chris | Person | Driver | NO |

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| 02/03/06 | Exel Carol Stream IL | Gary | Person | Delivery | NO |
| 02/06/06 | Exel Global Logistics Divisios St Bensenville | Dan | Person | Truck Driver | NO |
| 02/10/06 | Northwest Ford Manheim Rd Franklin PH | Sorin | Person | Maintance | NO |
| 02/13/06 | Gardner Tree West Chicago | Chuck | Person | Driver | NO |
| 02/14/06 | Tri State 700 Larson Bensenville IL | Robert | Person | Driver | |

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| 02/17/06 | Englon 7353 Cicero | Phone | Phone | Truck Driver | NO |
| 02/20/06 | Ilis cheescake | Pete | Person | Cleaning General | NO |
| 02/21/06 | Butler Transportor | John | Person | Truck Driver | NO |
| 02/28 | Morton Grove Park District | Greg | Person | Maintanance | NO |
| 03/02/06 | E & R Towing Crawford | | Phone | Tow Truck Driver | NO |

STOCK NO. 4022

P 003270

SOCIAL SECURITY NO. 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    CLIENT'S SIGNATURE _Carl Carter_

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| 03/?/06 | Hills Chicago | unknow | phone | driver | NO |
| 03/8/06 | Chicago Sun Times | PAT | phone | delivery driver | NO |
| 03/10/06 | Falcon | Ryan | phone | Driver | NO |
| 03/14/06 | Heartland Express | John | phone | Driver | NO |
| 03/16/06 | CNAS & Companion | Ramon | person | Driver | NO |

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| 03/18/06 | TH Ryan Cartage | | person | Driver | Will Call |
| 03/21/06 | Pirtano construction Cable TV Installers | Pirtano | person | maintance | NO |
| 03/23/06 | Elegant Banquets | Seph | person | cook | NO |
| 03/27/06 | Glenwood oaks Restaurant | | phone | cook | NO |
| 03/ | | | | | |

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**WEEK ENDING**

| CONTACT DATE | NAME AND ADDRESS OF CONTACT | PERSON CONTACTED | METHOD OF CONTACT* | TYPE OF WORK SOUGHT | RESULTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

P 000271

**Plaintiff's Exhibit 5**

**Plaintiff's Declaration**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSE ANDREU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07 C 06132 |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) Judge Samuel Der-Yeghiayan |
| | ) |
| Defendant. | ) Magistrate Judge Mason |

## DECLARATION OF PLAINTIFF JOSE ANDREU IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

1.  I, JOSE ANDREU, am the plaintiff in the above-captioned matter presently pending before this Court, and if called upon could competently testify to the following facts.

2.  I make this declaration solely to support my Motion for Partial Summary Judgment in this matter. It is not intended to be a complete account of my efforts to search for work, or the other events or matters addressed herein. Rather, it is intended to supplement my sworn deposition testimony on these issues, and other evidence in the record.

3.  After UPS terminated my employment on March 4, 2005, I began to look through the want ads in the paper for work that was within his medical restrictions, and call any prospective employers in search of work that was within my medical restrictions.

4.  From March 4, 2005, up until I was medically released to work full duty in October 2005, I made at least five attempts to contact, and/or contacts with prospective employers per week in an attempt to locate work within my medical restrictions.

Jose Declaration.wpd
January 5, 2008/tjc

5.    In January 2006, I contacted Bedford Motors, a company I had previously worked for.  Bedford Motors offered me a position as truck driver contingent upon my passing a physical.   In February 2006, I underwent and passed the requested physical.  Despite passing the physical, Bedford Motors refused to hire me.

6.    During the period from late January 2006 through June 2006, I continued to look through the want ads, and made at least five contacts with prospective employers per week.

7.    I am President and one-half owner of J&J Tree Service Company.  My brother, Jorge Andreu owns the other half of J&J.  Since July 2006, I have also worked full time for J&J in the position of tree trimmer.

8.    For the year 2006, its first full year of operations, J&J Tree Service Company earned revenue of $123,882.

9.    For the year 2007, I believe J&J earned gross revenue of approximately $160,000. I have yet to have an opportunity to meet with the company accountant to confirm the amount of 2007 gross revenue, so this number is my estimate as of this date.

10.    In late 2005, J&J purchased equipment worth approximately $33,500 for use in operations.

11.    In 2006, J&J purchased equipment worth approximately $42,000 for use in operations.

12.    In 2007, J&J purchased equipment with approximately $50,000 for use in its operations.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing
is true and correct.

Dated:  January 6, 2008

_JOSE ANDREU_

**Plaintiff's Exhibit 6**

**Plaintiff's Documents Bates-Stamped P000259-269**

# THE COFFEY LAW OFFICE, P.C.
1403 East Forest Avenue
Wheaton, IL 60187

Telephone: 630-534-6300
Facsimile: 630-534-6400

## FACSIMILE COVER LETTER

TO:      Radmila Geever                    DATE:   December 5, 2006

FIRM:    Bedford Motor Service, Inc.       FAX#:   (630) 739-6799   739
                                                                    6697

FROM:    Timothy J. Coffey                 RE:     Jose Andreu

Number of Pages including Cover Letter:    5     *RESONDING*
                                                 4/5/07  *NJC*

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is attorney
privileged and confidential information intended only for the individual or entity named above. If
the reader of this message is not the intended recipient or an employee or agent responsible to deliver
it to the intended recipient, you are hereby notified that any dissemination, distribution or copying
of this communication is strictly prohibited. If you have received this communication in error, please
immediately notify the sender by telephone and return the original message to us at the above
address. Thank you.

If you do not receive all of the pages please contact us at 630-534-6300.

P000259

## THE COFFEY LAW OFFICE, P.C.
### 1403 EAST FOREST AVENUE
### WHEATON, ILLINOIS 60187

FAX (630) 534-6400
TELEPHONE (630) 534-6300
EMAIL TCOFFLAW@SBCGLOBAL.NET

December 5, 2006

**VIA FACSIMILE ((630) 739-6799) AND US MAIL**

Radmila Geever
Bedford Motor Service, Inc.
2600 Internationale Parkway
Woodridge, IL        60517-4804

RE:    **Former Employee and Applicant Jose Andreu**

Dear Ms. Geever:

Please be advised that Jose Andreu has retained my law firm to investigate any and all legal claims he may have against Bedford Motor Service, Inc., arising from, or in any manner related to, Bedford's refusal to hire him in the position of driver in February 2006.

As Bedford's records reflect, Mr. Andreu worked for it as a driver in the past. He then reapplied for employment in February 2006. At that time, Bedford offered him a job as a driver, and directed him to undergo a physical at MacNeal Occupational Clinic in Schiller Park. Although, he passed the physical and was more than physically capable of performing all of the essential functions of the position, Bedford rescinded its job offer and refused to hire him.

I enclose herewith an authorization signed by Mr. Andreu pursuant to the Illinois Personnel Record Review Act, 820 ILCS §§ 40/2 and 40/3. Please send me copies of all personnel records in Bedford's possession, or in the possession of any of its agents or supervisory employees, concerning or relating to Mr. Andreu. I also enclose herewith copy of an authorization signed by Mr. Andreu for the release of copies of any and all health and medical documents in Bedford's possession to my office.

I would welcome a telephone call from you or Bedford's counsel regarding this matter and/or the document requests set forth herein. It has been my experience that all parties to potential litigation are better served by cooperation, and that some litigation can be avoided by simply sharing information.



Ms. Radmila Geever
December 6, 2006
Page 2


Thank you for your cooperation with this matter. Please call, or have your counsel call, should you have any questions.

Very truly yours,

Timothy J. Coffey

Enc.

cc:    Jose Andreu

P 000261

## AUTHORIZATION TO RELEASE DOCUMENTS PURSUANT TO
## THE ILLINOIS PERSONNEL RECORD REVIEW ACT (820 ILCS §§ 40/0.01 et seq.)

TO:    Bedford Motors Service, Inc.
Attn: Racmila Geeror, Dir. of HR.

     I, Jose Andreu, hereby request, pursuant to the Illinois Personnel Record Review Act, 820 ILCS §§ 40/2 and 40/3, that Bedford Motors provide me with a complete copy of my personnel record and file including any and all documents that refer or relate to me that are maintained by it, or in the possession of any of its affiliates, officers, agents or employees, including, but not limited to, any and all documents related in any manner to the company's refusal to hire me in the position of driver in February 2006.

     I ask that such documents and records be mailed directly to my attorneys c/o Timothy J. Coffey, The Coffey law Office, P.C., 1403 East Forest Ave., Wheaton, IL 60137. I agree to reimburse the company for the actual cost of duplicating and transmitting the documents and records as I have thereby requested and authorized. I appreciate your prompt attention to this matter.

Jose Andreu

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION

Name: _Jose Andreu_

DOB: _06/08/63_        Or SSN: _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_

I authorize _Bedford Motor Service, Inc._ to release health information to:
_The Coffey Law Office_ or their agent, _Timothy Coffey_, pursuant to 735 ILCS 5/8-2001 and 5/8-2003.   I author-
ize the use or disclosure of the named individual's health information as described below for the purpose of consulting with
my attorney.

**Information To Be Released:**

☒   Entire medical record (to include ER records, admission and discharge summaries, dictated reports and consults, op-
       erative and procedure reports, intraoperative and procedure flow sheets, informed consents, physician orders,
       progress notes, nurses notes, flow sheets, medication and transfusion records, test results, labs, pictures, pathology re-
       ports, EKGs, fetal monitoring strips, office records, immunization records, growth charts, telemetry strips, radiology
       and other diagnostic reports, patient instructions ).
         ☒     Any and all
         ☐     Last 5 years
         ☐     Other (specify)_____

☐   Record abstract (History and physical, progress notes, lab, radiology, operative report, pathology report, consultation
       report and diagnostic tests).
         ☐     Any and all
         ☐     Last 5 years
         ☐     Other (specify)_____

☐   Radiology and other diagnostic imaging films, pictures and/or CD rom (x-rays, CT scans, MRI, ultrasound, an-
       giogram, diagnostic procedure, etc), unless otherwise specified.
         ☐     Any and all
         ☐     Last 5 years
         ☐     Other (specify)_____

☐   Pathology slides.
       Describe:_____

☒   All medical and related bills related to the above requested information.

I authorize the use or disclosure of the above named individual's health information as described below for
the purpose of consulting with my attorney.  **The following items must be checked and initialed to be included in the use
and/or disclosure of other health information:**

☐ _____ HIV/AIDS related treatment
☐ _____ Sexually transmitted diseases
☐ _____ Mental health
☐ _____ Drug/alcohol diagnosis, treatment/referral.

•   I understand that I may revoke this authorization in writing at any time, provided that I do so in writing to
       _____, or its agent, except to the extent that the records have already been released.  Unless re-
       voked earlier, this authorization will expire 12 months from the date of signing or until (insert applicable date or
       event) _____
•   I understand authorizing the disclosure of health information is voluntary. I can refuse to sign this authorization. I
       understand that if the person or entity receiving the information is not a health care provider or health plan covered
       by federal HIPAA privacy regulations, the information described above may be redisclosed and no longer protected
       by these regulations.  However, the recipient may be prohibited from disclosing substance abuse information under
       the Federal Substance Abuse Confidentiality Requirements.
•   I acknowledge that I have received a copy of this authorization.

_J. Andreu_                                         _12/05/06_
Signature of Patient or Patient's Legal Representative        Date

_Jose Andreu_
Print Patient's Name

_Timothy J. Coffey_                          _Attorney_
Print Name of Legal Representative (if applicable)        Relationship to Patient

P000263

hp officejet d135
printer/fax/scanner/copier

**Fax-History Report** for
Timothy Coffey
630-534-6400
Dec 06 2006 4:45pm

## Last Transaction

| Date | Time | Type | Identification | | Duration | Pages | Result |
|------|------|------|----------------|---|----------|-------|--------|
| Dec 6 | 4:43pm | Fax Sent | 7396799 | | 1:25 | 5 | OK |

P 000264

**hp officejet d135**
**printer/fax/scanner/copier**

**Fax-History Report** for
Timothy Coffey
630-534-6400
Apr 05 2007 11:11am

---

## Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Apr 5 | 11:07am | Fax Sent | 7396697 | 1:25 | 5 | OK |

---



Diagnostics
800-877-7484

7541054 SPECIMEN ID NO. 800 877 7484

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE** LAB ACCESSION NO.

A. Employer Name, Address, I.D. No.

4700 MANNHEIM RD
SCHILLER PARK IL 60176
PH:708-783-2828 FAX:708-783-2874

B. MRO Name, Address, Phone and Fax No.
JOHN EVENS MD X
JAMES G WELLS MD
6500 W 95TH ST
CHICAGO IL 60638
PH:708-496-1515 708 FAX:708-496-0822

C. Donor SSN or Employee I.D. No.  2 5 9 - 30 - 1 9 5 6

D. Reason for Test:  ☒ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☐ Post-Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Drug Tests to be Performed:  ☒ THC, COC, PCP, OPI, AMP  ☐ THC & COC Only  ☐ Other (specify) _____
☒ 2643N NIDA 5 DRUG PANEL
( ) 35364N NIDA 5 PANEL W/NIT

F. Collection Site Name: _____  Collection Site Code: _____
Address: _____  Collector Phone No.: _____
City, State and Zip: _____  Collector Fax No.: _____

**STEP 2: COMPLETED BY COLLECTOR**

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☒ Yes ☐ No, Enter Remark | Specimen Collection: ☒ Split ☐ Single ☐ None Provided (Enter Remark) | ☐ Observed (Enter Remark) |

REMARKS

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed, and released to the Delivery Service Agent in accordance with applicable Federal requirements.

X _____ 3:49 AM/PM
Signature of Collector  Time of Collection
(Print) Collector's Name (First, MI, Last)  02/20/06
Date (Mo./Day/Yr.)

**SPECIMEN BOTTLE(S) RELEASED TO:**
☒ Quest Diagnostics Courier  ☐ FedEx
☐ DHL / Airborne  ☐ Other
Name of Delivery Service Transferring Specimen to Lab

RECEIVED AT LAB: X _____
Signature of Accessioner
(Print) Accessioner's Name (First, MI, Last)  / / Date (Mo./Day/Yr.)

Primary Specimen Bottle Seal Intact
☐ Yes
☐ No. Enter Remark Below

**SPECIMEN BOTTLE(S) RELEASED TO:**

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X Jose Andreu  Jose Andreu  02/20/06
Signature of Donor  (PRINT) Donor's Name (First, MI, Last)  Date (Mo./Day/Yr.)

Daytime Phone No. (773) C-71-2306  Evening Phone No. (630) 254 5862  Date of Birth 06/08/63
Mo. Day Yr.

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). - DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification is:

☐ NEGATIVE  ☐ POSITIVE  ☐ TEST CANCELLED  ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE  ☐ ADULTERATED  ☐ SUBSTITUTED

REMARKS _____

X _____  _____  / /
Signature of Medical Review Officer  (PRINT) Medical Review Officer's Name (First, MI, Last)  Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SECONDARY SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is:

☐ RECONFIRMED  ☐ FAILED TO RECONFIRM - REASON _____

X _____  _____  / /
Signature of Medical Review Officer  (PRINT) Medical Review Officer's Name (First, MI, Last)  Date (Mo./Day/Yr.)

## INSTRUCTIONS FOR COMPLETING DRUG TESTING CUSTODY AND CONTROL FORM

A  Collector ensures that the name and address of the drug testing laboratory appear on the top of the CCF and the Specimen I.D. number on the top of the CCF matches the specimen I.D. number on the labels/seals.

B  Collector provides the required information in STEP 1 on the CCF. The collector provides the remark in STEP 2 if the donor refuses to provide his/her SSN or Employee I.D. number.

C  Collector gives a collection container to the donor for providing a specimen.

D  After the donor gives the specimen to the collector, the collector checks the temperature of specimen within 4 minutes and marks the appropriate temperature box in STEP 2 on the CCF. The collector provides a remark if the temperature is outside the acceptable range.

E  Collector checks the split or single specimen collection box. If no specimen is collected, that box is checked and a remark is provided. If it is an observed collection, that box is checked and a remark is provided. If no specimen is collected, Copy 1 is discarded and the remaining copies are distributed as required.

F  Donor watches the collector pouring the specimen from the collection container into the specimen bottle(s), placing the cap(s) on the specimen bottle(s), and affixing the label(s)/seal(s) on the specimen bottle(s).

G  Collector dates the specimen bottle label(s) after they are placed on the specimen bottle(s).

H  Donor initials the specimen bottle label(s) after the label(s) have been placed on the specimen bottle(s).

I  Collector turns to COPY 2 (MRO Copy) and instructs the donor to read the certification statement in STEP 5 and to sign, print name, date, provide phone numbers and date of birth after reading the certification statement. If the donor refuses to sign the certification statement, the collector provides a remark in STEP 2 on Copy 1.

J  Collector completes STEP 4 (i.e. provides signature, printed name, date, time of collection, and name of delivery service). immediately places the sealed specimen bottle(s) and Copy 1 of the CCF in a leak-proof plastic bag, places the tracking label from the CCF on the specimen package, releases specimen package to the delivery service, and distributes the other copies as outlined in the standard operating procedure manual as required.

### Privacy Act Statement (For Federal Employees Only)

Submission of the information on the attached form is voluntary. However, incomplete submission of the information, refusal to provide a urine specimen, or substitution or adulteration of a specimen may result in a delay or denial of your application for employment/appointment or may result in your removal from Federal service or other disciplinary action.

The authority for obtaining the urine specimen and identifying information contained herein is Executive Order 12564 ("Drug-Free" Federal Workplace"), 5 U.S.C. § 3301 (2), 5 U.S.C. § 7301 and Section 503 of Public Law 100-71, 5 U.S.C. § 7301 note. Under provisions of Executive Order 12564 and U.S.C. 7301, test results may only be disclosed to agency officials on a need-to-know basis. This may include the agency Medical Review Officer, the administrator of the Employee Assistance Program, and a supervisor with authority to take adverse personnel action. This information may also be disclosed to a court where necessary to defend against a challenge to an adverse personnel action.

Submission of your SSN is not required by law and is voluntary. Your refusal to furnish your number will not result in the denial of any right, benefit, or privilege provided by law. Your SSN is solicited, pursuant to Executive Order 9397, for purposes of associating information in agency files relating to you and for purposes of identifying the specimen provided for urinalysis testing for illegal drugs. If you refuse to indicate your SSN, a substitute number or other identifier will be assigned as required, to process the specimen.

In the event laboratory analysis determines the presence of one or more illegal drugs in the specimen you provide, you will be contacted by an agency Medical Review Officer (MRO). The MRO will determine whether there is a legitimate medical explanation for the drug(s) identified by urinalysis.

### Paperwork Reduction Act Notice (as required by 5 CFR 1320.21)

Public reporting burden for this collection of information, including the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information is estimated for each respondent to average 5 minutes/donor; 4 minutes/collector; 3 minutes/laboratory; and 3 minutes/Medical Review Officer. Employees may send comments regarding these burden estimates, or any other aspect of this collection of information, including suggestions for reducing the burden, to the SAMHSA Reports Clearance Officer, Paperwork Reduction Project (0930-0158), Room 16-106, Parklawn Building, 5600 Fishers Lane, Rockville, MD 20857. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. The OMB control number for this project is 0930-0158.

P 000267



MEDICAL EXAMINER'S NAME (PRINT)
J. EVANS

☐ MD    ☐ DO
☐ CHIROPRACTOR
☐ PHYSICIAN ASSISTANT
☐ ADVANCED PRACTICE NURSE

MEDICAL EXAMINER'S LICENSE OR CERTIFICATE NO.
36 - 108128

ISSUING STATE
IL

DRIVER'S MEDICAL CERTIFICATE EXPIRATION DATE
02 / 20 / 2008

SIGNATURE OF DRIVER

DRIVER'S LICENSE NO.
A606-4206-3165

STATE
IL

ADDRESS OF DRIVER
7831 W Rascher Chicago IL 60656

CONTINUED ON REVERSE SIDE

No. 1095  Copyright © 1983    Reorder from Trans Products   1-800-457-9199   PO Box 868 Milford, DE 19963

P 000208

§391.43

## FMCSA Medical Examiner's Certificate

I certify that I have examined _____ Jose Andrell _____
DRIVERS NAME – PRINT
in accordance with the Federal Motor Carrier Safety Regulations (49 CFR 391.41-391.49) and with
knowledge of the driving duties, I find this person is qualified; and, if applicable, only when:
☐ Wearing corrective lenses          ☐ Wearing hearing aid
☐ Driving within an exempt intracity zone (49 CFR 391.62)
☐ Accompanied by a Skill Performance Evaluation Certificate (SPE)
☐ Accompanied by a _____  waiver / exemption
☐ Qualified by operation of 49 CFR 391.64
This information I have provided regarding this physical examination is true and complete.
A complete examination form with any attachment embodies my findings completely and correctly,
and is on file in my office.

| SIGNATURE OF MEDICAL EXAMINER | TELEPHONE 708 | DATE |
| | 783-287 3 | 02/20/06 |

CONTINUED ON REVERSE SIDE

No. 1050   Copyright © 1902   Reorder from Trans Products   1-800-367-5100   PO Box 964 Millard, OR 19069

P000269

**Plaintiff's Exhibit 7**

**Plaintiff's Documents Bates-Stamped P000350-375**



**Illinois Department of Revenue**



37854844 500X 7001

## Request for Information

**CONFIDENTIAL**

Date: March 8, 2007
IBT no.: 3785-4844

#BWNKRDL
#XJ1X 7J61 XNJX 1362#
J AND J TREE SERVICES CO
7831 W RASCHER AVE
CHICAGO IL 60656-1648

Dear Taxpayer:

We have received information regarding your business. Additional information is needed to complete your registration. In order to quickly and accurately complete your registration, you must complete the enclosed Form REG-1, Illinois Business Registration Application, and return it to us within 10 days from the date of this notice. When your registration is complete, we will send you a certificate of registration legally authorizing you to conduct business in Illinois.

If you need forms, visit our web site at tax.illinois.gov which contains information and publications that may assist you with your business.

If you have any questions, visit our web site at taxhelp.illinois.gov or call us weekdays between 8:30 a.m. and 5:00 p.m. at the telephone number listed below.

CENTRAL REGISTRATION DIVISION
ILLINOIS DEPARTMENT OF REVENUE
PO BOX 19030
SPRINGFIELD IL 62794-9030

217 785-3707

Enclosures

Page 1
F-01-000,987
LTR-500 (N-12/01)
This form is authorized by 20 ILCS 35 ILCS 5/1 et seq., 110/1 et seq., 115/1 et seq., 120/1 et seq., 130/1 et seq., 135/1 et seq., 143/10-1 et seq., 155/1 et seq., 415/1 et seq., 505/1 et seq., 510/1 et seq., 515/1 et seq., 620/1 et seq., 625/1 et seq., 630/1 et seq., 305 seq., 635/1 et seq., 640/2-1 et seq., 687/6 et seq., 230 ILCS 25/1 et seq., 30/1 et seq., 20/1 et seq., 235 ILCS 5/1-1 et seq., ILCS 20/5 et seq., 501/6-1 et seq., 415 ILCS 125/301 et seq. Disclosure of this information may be REQUIRED. Failure to provide

000350

CONFIDENTIAL

| Form **SS-4** (Rev. December 2001) Department of the Treasury Internal Revenue Service | **Application for Employer Identification Number** (For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, Indian tribal entities, certain individuals, and others.) ▶ See separate instructions for each line. ▶ Keep a copy for your records. | EIN 20-3798104 OMB No. 1545-0003 |
|---|---|---|

**1** Legal name of entity (or individual) for whom the EIN is being requested
J & J TREE SERVICE CO

| **2** Trade name of business (if different from name on line 1) | **3** Executor, trustee, "care of" name |
|---|---|

| **4a** Mailing address (room, apt., suite no. and street, or P.O. box) 7831 W RACHER | **5a** Street address (if different) (Do not enter a P.O. box) |
|---|---|
| **4b** City, state, and ZIP code CHICAGO IL 60656 | **5b** City, state, and ZIP code |

**6** County and state where principal business is located
County   COOK   State   IL

| **7a** Name of principal officer, general partner, grantor, owner, or trustor JOSE ANDREU | **7b** SSN, ITIN, EIN 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 |
|---|---|

**8a** Type of entity (check only one)
- [ ] Sole Proprietor (SSN)
- [ ] Partnership
- [x] Corporation (enter form number to be filed) ▶ 1120
- [ ] Personal Service
- [ ] Church or church-controlled organization
- [ ] Other nonprofit organization (specify) ▶
- [ ] Other (specify) ▶
- [ ] Estate (SSN of decedent)
- [ ] Plan administrator (SSN)
- [ ] Trust (SSN of grantor)
- [ ] National Guard
- [ ] Farmers' cooperative
- [ ] REMIC
- [ ] State/local government
- [ ] Federal government/military
- [ ] Indian tribal government/enterprises

Group Exemption NO. (GEN) ▶

| **8b** If a corporation, name the state or foreign country (if applicable) where incorporated | State IL | Foreign country |
|---|---|---|

**9** Reason for applying (check only one)
- [ ] Started new business (specify type)   ~~[x]~~ TREE REMOVER
- [ ] Hired employees (Check the box and see line 12)
- [ ] Compliance with IRS withholding regulations
- [ ] Other (specify) ▶
- [ ] Banking purpose (specify purpose) ▶
- [ ] Changed type of organization (specify new type) ▶
- [ ] Purchased going business
- [ ] Created a trust (specify type) ▶
- [ ] Created a pension plan (specify type) ▶

| **10** Date business started or acquired (month, day, year) NOV 1 2005 | **11** Closing month of accounting year DEC |
|---|---|

**12** First date wages or annuities were paid or will be paid (month, day, year) Note: If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year) ▶ DEC 2 2005

| **13** Highest number of employees expected in the next twelve months Note: If the applicant does not expect to have any employees during the period, enter "-0-" ............ ▶ | Agriculture | Household | Other 1 |
|---|---|---|---|

**14** Check box that best describes the principal activity of your business
- [ ] Construction
- [ ] Real estate
- [ ] Rental & leasing
- [ ] Manufacturing
- [ ] Transportation & warehousing
- [ ] Finance & insurance
- [ ] Health care & social assistance
- [ ] Accommodation & food service
- [ ] Retail
- [ ] Wholesale-agent/broker
- [ ] Wholesale-other
- [x] Other (specify) SERVICE

**15** Indicate principal line of merchandise sold; specific construction work done; products produced; or services provided.
TREE REMOVER

**16a** Has the applicant ever applied for an employer identification number for this or any other business? .......... [ ] Yes [x] No
Note: If "Yes" please complete lines 16b and 16c

**16b** If you checked "Yes" on line 16a, give applicant's legal name and trade name shown on prior application if different from line 1 or 2 above.
Legal name ▶
Trade name ▶

**16c** Approximate date when, and city and state where, the application was filed. Enter previous employer identification number if known.

| Approximate date when filed (month, day, year) | City and state where filed | Previous EIN |
|---|---|---|

| Third Party Designee | Complete section only if you want to authorize the named individual to receive the entity's EIN and answer questions about the completion of this form | |
|---|---|---|
| | Designee's name | Designee's telephone number (include area code) ( ) - |
| | Address and ZIP code | Designee's fax number (include area code) ( ) - |

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.
Name and title (type or print clearly)

Applicant's telephone number (include area code)

11/16/2005

 P 000351

**CONFIDENTIAL**

# Internal Revenue Service
DEPARTMENT OF THE TREASURY

The Digital Daily

## Federal Tax ID / EIN

This is your provisional Employer Identification Number:

**20-3798104**

Today's Date is: November 16, 2005 GMT

You will receive a confirmation letter in U.S. mail within fifteen days

The letter will also contain useful tax information for your business or organization.

If you have input any of the information on your application in error, please wait seven days and contact the EIN Toll Free area at 1-800-829-4933, Monday - Friday, 7:30am - 5:30pm. If you do not want to call, please make corrections on the letter you receive confirming your EIN and return it to the IRS.

If you are going to complete other on-line applications that require your Employer Identification Number(EIN) you can copy it by performing the following steps:

1) Use your mouse to highlight your EIN (blue number on top of page) by moving your pointer on top of the number.
2) Press the Ctrl key at the same time pressing the C key.

Once you copy your EIN you can paste it in the appropriate place by pressing the Ctrl key at the same time pressing the V key.

You may click on the buttons below for different print options or to fill out another Form SS-4.

Review and Print Form SS-4         Fill Out Another Form SS-4

Click here to return to the Internet Employer Identification Number landing (start) page.

P 000352



# CERTIFICATE OF OWNERSHIP

STATE OF ILLINOIS)
) SS
COUNTY OF DU PAGE)

CERTIFICATE NO.   57243
FILED:            JUNE 16, 2005
PUBLISHED:        JULY 8, 2005

I, Gary A. King, County Clerk in and for the County and State aforesaid, DO HEREBY CERTIFY that

JOSE ANDREU
JORGE ANDREU

J&J TREE SERVICES
2607 MAPLE AVENUE
DOWNERS GROVE, IL 60515-0000

has completed all requirements as specified in Chapter 805, ACT 405 of the Illinois Compiled Statues, "An Act in Relation to the Use of An Assumed Name in the Conduct or Transaction of Business in the State of Illinois."

All of which appears from the records now in my office remaining

Given under my Hand and Official Seal at

Wheaton, Illinois, this 8TH day of JULY, 2005



Gary A. King, County Clerk

CONFIDENTIAL

℗ 000353

**SECRETARY OF STATE JESSE WHITE**
**STATE OF ILLINOIS**
**CORPORATE ANNUAL REPORT**

(Form CDBCAF - Rev. 03/06/2006)

PLEASE READ THE INSTRUCTIONS BEFORE COMPLETING THIS FORM

(USE BLACK INK)



**CONFIDENTIAL**

J & J TREE SERVICE CO.
% JOSE ANDREU
7831 W RACHER
CHICAGO IL 60656



11/15/2005
Cook County

1 4. Verify information is accurate.

5. MUST list names and addresses of all officers and directors as of the date of signing. If you are the sole officer, please indicate. If more space is needed, enclose attachment with corporate file number on the attachment.

6. Changes to the authorized shares must be completed on form BCA 10.30 for Illinois Corporations. Foreign Corporations must file certified copies of amendment from state of incorporation. If any changes have been made to the issued shares, a BCA form 14.30 must be completed and filed

7. Verify Registered Agent on file is true and accurate. It will be necessary to file in this office form BCA 5.10 in order to make any changes in the Registered Agent's name and/or address. BCA 5.10 along with your $25 fee should be submitted **TOGETHER** with the Annual Report.

FILE # D 6456-678-4

7a. Insert the principal address of Corporation

7b. This document **MUST** be signed by an authorized Officer.

**Reverse Side**
8. If item 8 is incorrect or blank, please enter the correct information here and in item 8.

FEIN: _____

9. Complete preparer information as requested.

10. **Affirm** female or minority status. You must complete annually by selecting appropriate box. TO QUALIFY, 51% OWNERSHIP IS REQUIRED.

☐ Check this box if there are any changes in President or Secretary in #5 and **MAIL IN THIS PORTION WITH THE ANNUAL REPORT.** Your current President and Secretary are:

**President:** "1"JOSE ANDREU 7831 W RACHER CHICAGO IL 60656
**Secretary:**

**DETACH AT PERFORATION AND SUBMIT WITH PAYMENT. DO NOT SUBMIT PHOTOCOPY FOR FILING**    017471

| 1) Corporate Name J & J TREE SERVICE CO. | | | | 2) File Number D 6456-678-4 | 3) State / Country Illinois | 4) Inc / Qual Date 11/15/2005 |
|---|---|---|---|---|---|---|
| 5) President Name & Address | JOSE ANDREU 7831 W RACHER CHICAGO IL 60656 | | | | | |
| Secretary Name & Address | JOSE ANDREU 7831 W RACHER CHICAGO IL 60656 | | | | | |
| Officer / Director Name & Address | | | | | | |
| Officer / Director Name & Address | | | | | | |
| Officer / Director Name & Address | | | | | | |

| 6) Share Information | Class | Series | Par Value | Number Authorized | Number Issued as of 08/31/2006 |
|---|---|---|---|---|---|
| | COMMON | | .00000 | 100 | 100.000 |
| | | | | | |

| 7) Registered Agent JOSE ANDREU 7831 W RACHER CHICAGO IL 60656 Cook County | YEAR 2006 | **P000354** | 7a) Principal Address of Corporation: 7831 W RACHER CHICAGO IL 60656 |
|---|---|---|---|

7b) Under the penalty of perjury and as an authorized officer I declare that this annual report, pursuant to the provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete

X _____    President 01/15/07
SIGNATURE                    Title

YEAR OF 2006

SECRETARY OF STATE JESSE WHITE

PAGE 2

DUE PRIOR TO 11/01/2006

Case 1:07-cv-06132    Document 23    Filed 01/07/2008    Page 57 of 100

CORPORATION FILE #
D 6456-678-4

STATE OF ILLINOIS
CORPORATE ANNUAL REPORT
(Form CDBCAB - Rev. 09/09/2004)

PLEASE READ THE INSTRUCTIONS BEFORE COMPLETING THIS FORM

**CONFIDENTIAL**

**11.** Enter Paid-in Capital as of the date listed. (Paid-in Capital reflects the sum of the stated Capital and Paid-in surplus accounts)

**11a.** If box 11 and 11a are different, you MUST file a BCA 14.30.

**12.** The State of Illinois requires all For Profit Corporations to pay a franchise tax. You must choose the method in which you will calculate your franchise tax from the 3 options listed below. **You MUST fill in your choice in box 12.**

    **A.** All Property of the corporation is in Illinois and ALL business of the corporation is transacted at or from places of business in Illinois. Skip boxes 12a through 12d and **Enter 1.000000 in box 12e.**

    **B.** The corporation ELECTS to pay franchise tax on the basis of 100% of its total paid-in capital. Skip boxes 12a through 12d and **Enter 1.000000 in box 12e.**

    **C.** The corporation has assets and / or transacts business outside of the State of Illinois, boxes 12a through 12d MUST be completed.

    "Property" means gross assets, including all real, personal, tangible and intangible property, without qualification. "Business" means gross receipts, from whatever source derived.

    Note. The figures used in 12a) through 12d) will be given as of the close of the corporation's fiscal year on or immediately preceeding the date printed in item 11. Enter date in item 12 FYE.

**12a)** Enter the value of the property owned by the corporation, wherever located: **GROSS ASSETS.**

**12b)** Enter the value of the property owned by the corporation, located in Illinois: **ILLINOIS GROSS ASSETS.**

**12c)** Enter the gross amount of business transacted by the corporation everywhere.

**12d)** Enter the gross amount of business transacted by the corporation at or from places of business in the State of Illinois

**12e)** Divide (12b – 12d) by (12a + 12c). This figure MUST BE 6 decimal places and ENTERED into box 12e.

**12f)** Multiply box 11 by box 12e. If the annual report is late, multiply the greater of box 11 or 11a by box 12e.

**12g)** Multiply box 12f by 0.001. If this figure is less than $25.00 enter $25.00. If greater than $2,000,000.00 enter $2,000,000.00.

**13.** If submitting after due, complete worksheet below.

**Late annual report**
Multiply box 12g by 0.10

**Late Franchise Tax**
Multiply box 12g by .01 by number of months late (minimum $1.00).

Enter total in box 13

         TOTAL

**14)** $75.00 filing fee.

**15)** Total due: add boxes 12g - 13 -14 (MINIMUM $100.00).

**16)** Make check payable to Secretary of State. Please detach check stub

# CHECKLIST

**Boxes 5 and 11 have been completed.** ☐

**Box 12 has been completed and choice for Franchise tax was given.** ☐

**Box 12e has been completed.** ☐

**Box 12g is not less than $25.00.** ☐

**Box 15 is not less than $100.00.** ☐

**Box 7b is signed by an officer.** ☐

**Place File number on check. Do not staple or paper clip check to annual report.** ☐

If submitting a form BCA 14.30, your previous allocation factor is  1.000000

Additional forms are located at www.ilsos.net or can be requested by telephone at (217) 782-6961. For questions regarding this form please call 217-782-7808.

---

| File # D 6456-678-4 | 8) FEIN 20-3798104 | 11) Current Paid-in Capital 08/31/2006    100. | | 11a) 100 |
|---|---|---|---|---|
| 9) Prepared by | | 12)    A ☒    B ☐    c ☐ | Use decimals in 12a d, f & g also in 13 and 15 | 12) FYE (See Note) |
| Address | | 12a) Total Gross Assets    $ | | **Franchise Tax & Fees** |
| Phone # | | 12b) Gross Assets in Illinois    $ | | 12g) Franchise tax (Minimum of $25) |
| E-mail Address | | 12c) Total Gross Business    $ | | 13) Penalty / Interest    3.75 |
| 10) ☐ Female  ☐ Minority  ☐ Both | | 12d) Total Business in Illinois  $ | | 14) Filing fee    $75.00 |
| Annual Report Year 2006    11/01/2006 | | 12e) Allocation Factor    100.000 | | 15) Total Due (Minimum of $100.00) |
| | | 12f) Illinois Capital    $ | | 103.75 |

**Jesse White Secretary of State**
Department of Business Services
501 S 2nd Street
Springfield IL 62756-5510

℗ 000355

6456678411150600000001009

CONFIDENTIAL

**J & J TREE SERVICE CO**
7831 W RACHER
CHICAGO, IL 60656

11-05

190

DATE 01/15/07

2-60/710

PAY
TO THE
ORDER OF. SECRETARY OF STATE ............................................. $ 103.75

ONE HUNDRED THREE AND 75/100 XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

DOLLARS

**LaSalle Bank**
ABN AMRO
Chicago, IL 63803 | lasallebank.com

FOR _____

D 6456-678-4 ( 2006 )

⑈000190⑈ ⑈071000505⑈ 520144438 6⑈

NP

P 000356



# OFFICE OF THE SECRETARY OF STATE

SPRINGFIELD, ILLINOIS 62756

December 8, 2006

**JESSE WHITE**
SECRETARY OF STATE

Notice of Delinquency

CONFIDENTIAL

J & J TREE SERVICE CO.
% JOSE ANDREU   (11-15-2005)
7831 W RACHER
CHICAGO IL   60656

You are hereby given notice of the facts relating to the filing of the annual report and the payment of franchise tax, penalties, and interest relating to the above corporation pursuant to section 12.40 of the Business Corporation Act of Illinois in force July 1, A.D. 1984.   That the amount of franchise taxes, penalties, and interest due and not paid for this year are:

| | |
|---|---|
| Franchise Tax | $ 25.00 |
| Annual Report Filing Fee | $ 75.00 |

Penalties & Interest:
10% Late Filing Plus 1% Per Month (minimum $1.00).
The following fee stated is computed at the maximum of 5 months delinquency and 100% Paid In Capital.    $    3.75

| | |
|---|---|
| Amount of Fees Due | $ 103.75 |

That the aforesaid corporation has not filed an annual report prior to the first day of November, 2006.

That the annual report must be executed (both sides) and submitted with the 14.30 form, if it is applicable.
These forms are available on our website at www.ilsos.net.

That unless the corporation complies with the above requirements within 90 days of the date of this notice, the corporation is subject to involuntary dissolution.

Secretary of State
State of Illinois
Business Services Department
(217) 782-7808

P 000357

004638

CONFIDENTIAL

 LaSalle Bank
ABN·AMRO

Dear Customer:

630—271 6414
969-8100

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact LaSalle Bank N.A., Business Banking Loan Center, 3201 N. Ashland Avenue, Chicago, IL 60657, or call 773-244-7447 within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

LaSalle Bank N.A.
Business Banking Loan Center
3201 N. Ashland Avenue
Chicago, IL 60657
773-244-7447

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050.

 000358

CONFIDENTIAL

# Form 1120 U.S. Corporation Income Tax Return

OMB No. 1545-0123

Department of the Treasury
Internal Revenue Service

For calendar year 2006 or tax year beginning _____, 2006, ending _____, 20__

▶ See separate instructions.

**2006**

| A Check if: | | | B Employer identification number |
|---|---|---|---|
| 1 Consolidated return (attach Form 851) | | Use IRS label. Other-wise, print or type. | 20-3798104 |
| 2 Personal holding co. (attach Sch. PH) | | Name: J & J TREE SERVICES CO | C Date incorporated |
| 3 Personal service corp (see instructions) · · X | | Number, street, and room or suite no. If a P.O. box, see instructions. 7831 W RACHER | 11-15-2005 |
| 4 Schedule M-3 required (attach Sch. M-3) | | City or town, state, and ZIP code  CHICAGO   IL   60656 | D Total assets (see instructions) $ 81,707 |

E Check if:  (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change

| | | | |
|---|---|---|---:|
| **Income** | 1a Gross receipts or sales | 123,882 | b Less returns and allowances | c Bal ▶ | **1c** 123,882 |
| | 2 Cost of goods sold (Schedule A, line 8) | | **2** 0 |
| | 3 Gross profit. Subtract line 2 from line 1c | | **3** 123,882 |
| | 4 Dividends (Schedule C, line 19) | | **4** |
| | 5 Interest | | **5** |
| | 6 Gross rents | | **6** |
| | 7 Gross royalties | | **7** |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | **8** |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | **9** |
| | 10 Other income (see instructions - attach schedule) | | **10** |
| | 11 Total income. Add lines 3 through 10 ▶ | | **11** 123,882 |
| **Deductions** (See instructions for limitations on deductions.) | 12 Compensation of officers (Schedule E, line 4) | | **12** |
| | 13 Salaries and wages (less employment credits) | | **13** |
| | 14 Repairs and maintenance | | **14** |
| | 15 Bad debts | | **15** |
| | 16 Rents | | **16** |
| | 17 Taxes and licenses | | **17** |
| | 18 Interest | | **18** 2,800 |
| | 19 Charitable contributions | | **19** |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | | **20** 7,633 |
| | 21 Depletion | | **21** |
| | 22 Advertising | | **22** 236 |
| | 23 Pension, profit-sharing, etc., plans | | **23** |
| | 24 Employee benefit programs | | **24** |
| | 25 Domestic production activities deduction (attach Form 8903) | | **25** |
| | 26 Other deductions (attach schedule) · · · · Statement # 5 · · | | **26** 111,573 |
| | 27 Total deductions. Add lines 12 through 26 ▶ | | **27** 122,242 |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | **28** 1,640 |
| | 29 Less: a Net operating loss deduction (see instructions) · · · 29a | | |
| | b Special deductions (Schedule C, line 20) · · · · · 29b | | **29c** |
| **Tax and Payments** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) | | **30** 1,640 |
| | 31 Total tax (Schedule J, line 10) | | **31** 574 |
| | 32a 2005 overpayment credited to 2006 · · 32a | | |
| | b 2006 estimated tax payments · · · · 32b | | |
| | c 2006 refund applied for on Form 4466 32c ( )  d Bal ▶ 32d | | |
| | e Tax deposited with Form 7004 · · · · · 32e | | |
| | f Credits: (1) Form 2439 _____ (2) Form 4136 _____ 32f | | |
| | g Credit for federal telephone excise tax paid (attach Form 8913) · · · · · 32g | | **32h** |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached · · · · · · · ▶ | | **33** |
| | 34 Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed · · · · · · · | | **34** 574 |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid · · · · | | **35** |
| | 36 Enter amount from line 35 you want Credited to 2007 estimated tax ▶ _____ Refunded ▶ | | **36** |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____  Date _____  Title _____

May the IRS discuss this return with the preparer shown below (see instructions)?  Yes ☐  No ☒ X

**Paid Preparer's Use Only**

| Preparer's signature | Date 01-21-2007 | Check if self employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | NIGO CORPORATION  134 E BRIARCLIFF RD  BOLINGBROOK IL 60440 | EIN 32-0069439 | |
| | | Phone no. (630)972-1344 | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    EEA    Form 1120 (2006)

COPY

J & J TREE SERVICES CO  20-3798104

| Schedule A | Cost of Goods Sold  (see instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 0 |

9a  Check all methods used for valuing closing inventory:
   (i)   Cost
   (ii)   Lower of cost or market
   (iii)   Other (Specify method used and attach explanation.) ▶
  b  Check if there was a writedown of subnormal goods ▶
  c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ▶
  d  If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO | 9d |
  e  If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? Yes No
  f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation Yes No

| Schedule C | Dividends and Special Deductions  (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) × (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations | | see Instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries | | 100 | |
| 9 | **Total.** Add lines 1 through 8. See instructions for limitation | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from affiliated group members | | 100 | |
| 12 | Dividends from certain FSCs | | 100 | |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach form(s) 5471) | | | |
| 15 | Foreign dividend gross-up | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 | | | |
| 17 | Other dividends | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 19 | **Total dividends.** Add lines 1 through 17. Enter here and on page 1, line 4 ▶ | | | |
| 20 | **Total special deductions.** Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b ▶ | | | |

| Schedule E | Compensation of Officers  (see instructions for page 1, line 12) | | | | | |
|---|---|---|---|---|---|---|

**Note: Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1) are $500,000 or more.**

| (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | Percent of corporation stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| 1 | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |
| | | | % | % | % | |

| 2 | Total compensation of officers | |
|---|---|---|
| 3 | Compensation of officers claimed on Schedule A and elsewhere on return | |
| 4 | Subtract line 3 from line 2. Enter the result here and on page 1, line 12 | |

EEA

Form **1120** (2006)

P 000360

CONFIDENTIAL

Case 1:07-cv-00132  Document 23    Filed 01/07/2008   Page 63 of 100

## Schedule J    Tax Computation (see instructions)

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)) ▶ | | |
| 2 | Income tax. Check if a qualified personal service corporation (see instructions) · · · · · · · · · · · ▶ X | 2 | 574 |
| 3 | Alternative minimum tax (attach Form 4626) · · · · · · · · · · · · · · · · · · · · · · | 3 | |
| 4 | Add lines 2 and 3 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | 4 | 574 |
| 5a | Foreign tax credit (attach Form 1118) · · · · · · · · · · · · · · · · · 5a | | |
| b | Qualified electric vehicle credit (attach Form 8834) · · · · · · · · · · 5b | | |
| c | General business credit. Check applicable box(es):   Form 3800 | | |
| | Form 6478      Form 8835, Section B    Form 8844 · · · · · · · 5c | | |
| d | Credit for prior year minimum tax (attach Form 8827) · · · · · · · · · · 5d | | |
| e | Bond credits from:   Form 8860    Form 8912 · · · · · · · · · · · · · · 5e | | |
| 6 | Total credits. Add lines 5a through 5e · · · · · · · · · · · · · · · · · · · · · · · | 6 | |
| 7 | Subtract line 6 from line 4 · · · · · · · · · · · · · · · · · · · · · · · · · · · · | 7 | 574 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) · · · · · · · · · · · · · · · · · | 8 | |
| 9 | Other taxes. Check if from:   Form 4255    Form 8611    Form 8697 | | |
| | Form 8866    Form 8902    Other (attach schedule) · · · | 9 | |
| 10 | Total tax. Add lines 7 through 9. Enter here and on page 1, line 31 · · · · · · · · · · · · · · · | 10 | 574 |

## Schedule K    Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:   a X Cash | | |
| | b   Accrual   c   Other (specify) ▶ | | |
| 2 | See the instructions and enter: | | |
| a | Business activity code no. ▶ 561730 | | |
| b | Business activity ▶ SERVICES | | |
| c | Product or service ▶ LANDSCAPING | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) · · · · · · · · · · · · · · · | | X |
| | If "Yes," attach a schedule showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) taxable income or (loss) before NOL and special deductions of such corporation for the tax year ending with or within your tax year. | | |
| 4 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? · · · · · · · · · · · · | | X |
| | If "Yes," enter name and EIN of the parent corporation ▶ _____ | | |
| 5 | At the end of the tax year, did any individual, partnership, corporation, estate, or trust own, directly or indirectly, 50% or more of the corporation's voting stock? (For rules of attribution, see section 267(c).) · · · · · · · · · · · | | X |
| | If "Yes," attach a schedule showing name and identifying number. (Do not include any information already entered in 4 above.) Enter percentage owned ▶ 0 | | |
| 6 | During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) · · · · · · · · · · · · · · · · · · · · · · · · · | | |
| | If "Yes," file Form 5452, Corporate Report of Nondividend Distributions. | | |
| | If this is a consolidated return, answer here for the parent corporation and on Form 851, Affiliations Schedule, for each subsidiary. | | |

| | | Yes | No |
|---|---|---|---|
| 7 | At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of (a) the total voting power of all classes of stock of the corporation entitled to vote or (b) the total value of all classes of stock of the corporation? · · · · · · · · · · · · · · · · · · · · | | X |
| | If "Yes," enter: (a) Percentage owned ▶ 100 | | |
| | and (b) Owner's country ▶ CO | | |
| c | The corporation may have to file Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter number of Forms 5472 attached ▶ | | |
| 8 | Check this box if the corporation issued publicly offered debt instruments with original issue discount · · · · ▶ | | |
| | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 9 | Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____ | | |
| 10 | Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ 2 | | |
| 11 | If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here ▶ | | |
| | If the corporation is filing a consolidated return, the statement required by Temporary Regulations section 1.1502-21T(b)(3) must be attached or the election will not be valid. | | |
| 12 | Enter the available NOL carryover from prior tax years (Do not reduce it by any deduction on line 29a.) ▶ $ _____ | | |
| 13 | Are the corporation's total receipts (line 1 plus lines 4 through 10 on page 1) for the tax year and its total assets at the end of the tax year less than $250,000? · · · · · · | | X |
| | If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2 on page 4. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ▶ $ _____ | | |

**Note:** If the corporation, at any time during the tax year, had assets or operated a business in a foreign country or U.S. possession, it may be required to attach **Schedule N (Form 1120)**, Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

P 000361

Case 1:07-cv-06132   Document 23   Filed 01/09/2008   Page 64 of 100

CONFIDENTIAL

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| **Assets** | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 105 | | 14288 |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | ( ) | | ( ) | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach schedule) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach schedule) | | | | |
| 10a | Buildings and other depreciable assets | 33500. | | 75500. | |
| b | Less accumulated depreciation | ( 448. ) | 33052. | ( 8081. ) | 67419. |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach schedule) | | | | |
| 15 | Total assets | | 33157. | | 81707. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | 5076. |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach schedule) | | 9198. | | 14606. |
| 19 | Loans from shareholders | | 30000. | | 67000. |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach schedule) | | | | |
| 22 | Capital stock:  a  Preferred stock | | | | |
| | b  Common stock | | 100. | 100. | 100. |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings-Appropriated (attach schedule) | | | | |
| 25 | Retained earnings-Unappropriated | | -6141. | | -5075. |
| 26 | Adjustments to shareholder's equity (attach schedule) | | | | |
| 27 | Less cost of treasury stock | | ( ) | | ( ) |
| 28 | Total liabilities and shareholders' equity | | 33157 | | 81707. |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return | | |
|---|---|---|---|
| | Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more—see instructions | | |
| 1 | Net income (loss) per books | 1066. | 7  Income recorded on books this year not |
| 2 | Federal income tax per books | 574. | included on this return (itemize): |
| 3 | Excess of capital losses over capital gains | | Tax-exempt interest  $ _____ |
| 4 | Income subject to tax not recorded on books this year (itemize): | | |
| | | | 8  Deductions on this return not charged against book income this year (itemize): |
| 5 | Expenses recorded on books this year not deducted on this return (itemize): | | a  Depreciation $ _____ |
| a | Depreciation  $ _____ | | b  Charitable contributions $ _____ |
| b | Charitable contributions  $ _____ | | |
| c | Travel and entertainment  $ _____ | | |
| | | | 9  Add lines 7 and 8 |
| 6 | Add lines 1 through 5 | 1640. | 10  Income (page 1, line 28)-line 6 less line 9 | 1640. |

| Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L) | | |
|---|---|---|---|
| 1 | Balance at beginning of year | -6141. | 5  Distributions:  a  Cash |
| 2 | Net income (loss) per books | 1066. | b  Stock |
| 3 | Other increases (itemize): _____ | | c  Property |
| | | | 6  Other decreases (itemize): |
| | | | 7  Add lines 5 and 6 |
| 4 | Add lines 1, 2, and 3 | 5075. | 8  Balance at end of year (line 4 less line 7) | - 5075. |

EEA

000362

Form **1120** (2006)

Form **4562**

Department of the Treasury
Internal Revenue Service

**Depreciation and Amortization**

**(Including Information on Listed Property)**

▶ See separate instructions.   ▶ Attach to your tax return.

OMB No. 1545-0172

**2006**

Attachment
Sequence No. **67**

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| J & J TREE SERVICES CO | FORM 1120 | 20-3798104 |

**Part I   Election To Expense Certain Property Under Section 179**
Note:  If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses | **1** |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** |
| 3 | Threshold cost of section 179 property before reduction in limitation | **3** |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| **6** | | |
| | | |

| | | |
|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** |
| 10 | Carryover of disallowed deduction from line 13 of your 2005 Form 4562 | **10** |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5  (see instructions) | **11** |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | **12** |
| 13 | Carryover of disallowed deduction to 2007. Add lines 9 and 10, less line 12   ▶ | **13** | |

Note:  Do not use Part II or Part III below for listed property. Instead, use Part V.

**Part II   Special Depreciation Allowance and Other Depreciation**   (Do not include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 | Special allowance for qualified New York Liberty or Gulf Opportunity Zone property (other than listed property) placed in service during the tax year (see instructions) | **14** |
| 15 | Property subject to section 168(f)(1) election | **15** |
| 16 | Other depreciation (including ACRS) | **16** |

**Part III   MACRS Depreciation**   (Do not include listed property.) (See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2006 | **17** |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here  ▶ | |

**Section B - Assets Placed in Service During 2006 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only-see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C - Assets Placed in Service During 2006 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 40-year | | | 40 yrs. | MM | S/L | |

**Part IV   Summary**  (see instructions)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | 7,633 |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | **22** | 7,633 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

For Paperwork Reduction Act Notice, see separate instructions.                    EFA

Form **4562** (2006)

CONFIDENTIAL
Case 1:07-cv-00608-JD    Document 23    Filed 01/07/2008    Page 66 of 100

**Part V    Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

| 24a Do you have evidence to support the business/investment use claimed? | X Yes | No | 24b If "Yes," is the evidence written? | X Yes | No |
|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ Investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special allowance for qualified New York Liberty or Gulf Opportunity Zone property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . . . . . . . . . . . . . | | | | | **25** | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| TRAILER | 2005 11 20 | 100 % | 1,500 | 1,450 | 5 | S/L-MM | 300 | |
| TRUCK92-GM | 2005 12 01 | 100 % | 10,000 | 9,667 | 5 | S/L-MM | 2,000 | |
| TRUCK | 2005 12 20 | 100 % | 22,000 | 21,935 | 10 | S/L-MM | 2,200 | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| STUMPGRIND | 2006 02 15 | 100 % | 20,000 | 20,000 | 10 | S/L- MQ | 1,667 | |
| WOODSHIPPE | 2006 04 18 | 100 % | 22,000 | 22,000 | 10 | S/L- MQ | 1,466 | |
| | | % | | | | S/L- | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . . . . . . . . . . | | | | | **28** | | 7,633 | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . . . . . . . . . . . | | | | | | | **29** | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year ( **do not** include commuting miles) . . . . . . . . . . . | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . . . . | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . . . . . . . . . | | |
| 39 | Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . . . . . . . | | |
| | **Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles. | | |

**Part VI    Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2006 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2006 tax year . . . . . . . . . . . . . . . . . . . . | | | | **43** | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report . . . . . . . . . . . . | | | | **44** | |

ᑭ 000364

CONFIDENTIAL

**Federal Supporting Statements**

2006 PG01

| Name(s) as shown on return | FEIN |
|---|---|
| J & J TREE SERVICES CO | 20-3798104 |

### FORM 1120 PAGE 1

Statement # 5

| DESCRIPTION | AMOUNT |
|---|---:|
| Accounting cost | 525 |
| Automobile and truck expenses | 8,581 |
| Equipment rent | 1,585 |
| Insurance | 4,299 |
| Laundry and cleaning | 210 |
| Meals and entertainment 50% limit | 642 |
| Office expense | 416 |
| Outside services and independant contractors | 42,000 |
| Parking fees and tolls | 491 |
| Telephone | 2,590 |
| Tools | 1,028 |
| Uniforms | 743 |
| MATERIALS & SUPPLIES | 48,294 |
| WASTE MANAGEMENT | 169 |
| **TOTAL** | **111,573** |

000365

Form **1120**

**U.S. Corporation Income Tax Return**

Department of the Treasury
Internal Revenue Service

For calendar year 2005 or tax year beginning _____ 2005, ending _____

▶ See separate instructions.

OMB No. 1545-0123

CONFIDENTIAL

**2005**

**A** Check if:

| | | Use IRS label. Other- wise, print or type. | | | |
|---|---|---|---|---|---|
| 1 | Consolidated return (attach Form 851) | | Name | **B** Employer identification number |
| 2 | Personal holding co. (attach Sch. PH) | | J & J TREE SERVICES CO | 20-3798104 |
| 3 | Personal service corp. (see instructions) | | Number, street, and room or suite no. If a P.O. box, see instructions. | **C** Date incorporated |
| 4 | Schedule M-3 required (attach Sch. M-3) | | 7831 W RACHER | 11-15-2005 |
| | | | City or town, state, and ZIP code | **D** Total assets (see instructions) |
| | | | Chicago          IL    60656 | $          33,157 |

**E** Check if:  (1) X Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales | 12,225 | **b** Less returns and allowances | **c** Bal ▶ | **1c** | 12,225 |
| | **2** Cost of goods sold (Schedule A, line 8) | | | **2** | 0 |
| | **3** Gross profit. Subtract line 2 from line 1c | | | **3** | 12,225 |
| | **4** Dividends (Schedule C, line 19) | | | **4** | |
| | **5** Interest | | | **5** | |
| | **6** Gross rents | | | **6** | |
| | **7** Gross royalties | | | **7** | |
| | **8** Capital gain net income (attach Schedule D (Form 1120)) | | | **8** | |
| | **9** Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | **9** | |
| | **10** Other income (see instructions - attach schedule) | | | **10** | |
| | **11** Total income. Add lines 3 through 10 ▶ | | | **11** | 12,225 |

| | | | | |
|---|---|---|---|---|
| **Deduc- tions** (See Instruc- tions for limita- tions on deduc- tions.) | **12** Compensation of officers (Schedule E, line 4) | | **12** | |
| | **13** Salaries and wages (less employment credits) | | **13** | |
| | **14** Repairs and maintenance | | **14** | |
| | **15** Bad debts | | **15** | |
| | **16** Rents | | **16** | |
| | **17** Taxes and licenses | | **17** | |
| | **18** Interest | | **18** | |
| | **19** Charitable contributions (see instructions for 10% limitation) | | **19** | |
| | **20a** Depreciation (attach Form 4562) | **20a** 448 | | |
| | **b** Less depreciation claimed on Schedule A and elsewhere on return | **20b** | **20c** | 448 |
| | **21** Depletion | | **21** | |
| | **22** Advertising | | **22** | 125 |
| | **23** Pension, profit-sharing, etc., plans | | **23** | |
| | **24** Employee benefit programs | | **24** | |
| | **25** Domestic production activities deduction (attach Form 8903) | | **25** | |
| | **26** Other deductions (attach schedule) | | **26** | 17,793 |
| | **27** Total deductions. Add lines 12 through 26 ▶ | | **27** | 18,366 |
| | **28** Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | **28** | (6,141) |
| | **29** Less:  **a** Net operating loss deduction (see instructions) | **29a** | | |
| | **b** Special deductions (Schedule C, line 20) | **29b** | **29c** | |

| | | | | |
|---|---|---|---|---|
| **Tax and Pay- ments** | **30** Taxable income. Subtract line 29c from line 28 (see instructions if Schedule C, line 12, was completed) | | **30** | (6,141) |
| | **31** Total tax (Schedule J, line 11) | | **31** | 0 |
| | **32** Payments: **a** 2004 overpayment credited to 2005 | **32a** | | |
| | **b** 2005 estimated tax payments | **32b** | | |
| | **c** Less 2005 refund applied for on Form 4466 | **32c** ( ) | **d** Bal ▶ | **32d** | |
| | **e** Tax deposited with Form 7004 | | **32e** | |
| | **f** Credits: (1) Form 2439          (2) Form 4136 | **32f** | **32g** | |
| | **33** Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ | | **33** | |
| | **34** Tax due. If line 32g is smaller than the total of lines 31 and 33, enter amount owed | | **34** | |
| | **35** Overpayment. If line 32g is larger than the total of lines 31 and 33, enter amount overpaid | | **35** | |
| | **36** Enter amount of line 35 you want: Credited to 2006 estimated tax ▶          Refunded ▶ | | **36** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge

| | | | |
|---|---|---|---|
| Signature of officer | Date | Title | May the IRS discuss this return with the preparer shown below (see instructions)?  X Yes  ☐ No |

**Paid Preparer's Use Only**

| | | | | |
|---|---|---|---|---|
| Preparer's signature ▶ | | Date 01-21-2007 | Check if self-employed ☐ | Preparer's SSN or PTIN |
| Firm's name (or yours if self-employed), address, and ZIP code | NIGO  CORPORATION 134 E BRIARCLIFF  RD BOLINGBROOK IL 60440 | | EIN  32-0069439 | |
| | | | Phone no.  (630) 972-1344 | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.          EEA          Form **1120** (2005)

CONFIDENTIAL

| **Schedule A** | **Cost of Goods Sold** (see instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 0 |

9a   Check all methods used for valuing closing inventory:
  (i)   Cost
  (ii)  Lower of cost or market
  (iii) Other (Specify method used and attach explanation.) ▶
b   Check if there was a writedown of subnormal goods · · · · · · · · · · · · · · · · · · · · · · · · · · ▶
c   Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) · · · · · · · · · · ▶

d   If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing
    inventory computed under LIFO · · · · · · · · · · · · · · · · · · · · · · · · · · · · | 9d |
e   If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? · · · · · · · · · · · · Yes   No
f   Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes,"
    attach explanation · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · Yes   No

| **Schedule C** | **Dividends and Special Deductions** (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations | | see instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries | | 100 | |
| 9 | **Total.** Add lines 1 through 8. See instructions for limitation | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from affiliated group members and FSCs | | 100 | |
| 12 | Dividends from controlled foreign corporations (attach Form 8895) | | 85 | |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | | | |
| 15 | Foreign dividend gross-up | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 | | | |
| 17 | Other dividends | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 19 | **Total dividends.** Add lines 1 through 17. Enter here and on page 1, line 4 ▶ | | | |
| 20 | **Total special deductions.** Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b ▶ | | | |

| **Schedule E** | **Compensation of Officers** (see instructions for page 1, line 12) |
|---|---|

**Note:** Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1) are $500,000 or more.

| (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | Percent of corporation stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| 1 | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| 2 | Total compensation of officers · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | | | |
| 3 | Compensation of officers claimed on Schedule A and elsewhere on return · · · · · · · · · · · · · · | | | | |
| 4 | Subtract line 3 from line 2. Enter the result here and on page 1, line 12 · · · · · · · · · · · · · · · | | | | |

P 000367

## Schedule J  Tax Computation (see instructions)

1  Check if the corporation is a member of a controlled group · · · · · · · · · · · · · · · · · ▶
   **Important:** Members of a controlled group, see instructions.

2 a  If the box on line 1 is checked, enter the corporation's share of the $50,000, $25,000, and $9,925,000 taxable
     income brackets (in that order):
   (1) $ _____    (2) $ _____    (3) $ _____
 b  Enter the corporation's share of:  (1) Additional 5% tax (not more than $11,750)  $ _____
                                        (2) Additional 3% tax (not more than $100,000)  $ _____

| | | |
|---|---|---|
| 3  Income tax. Check if a qualified personal service corporation (see instructions) · · · · · · · ▶ | 3 | 0 |
| 4  Alternative minimum tax (attach Form 4626) · · · · · · · · · · · · · · · · · | 4 | |
| 5  Add lines 3 and 4 · · · · · · · · · · · · · · · · · | 5 | 0 |

6 a  Foreign tax credit (attach Form 1118) · · · · · · · · · · ·  | 6a |
 b  Possessions tax credit (attach Form 5735) · · · · · · · · ·  | 6b |
 c  Credits from:   Form 8834    Form 8907, line 23 · · · ·  | 6c |
 d  General business credit. Check box(es) and indicate which forms are attached·
     Form 3800   Form(s) (specify) ▶ _____  | 6d |
 e  Credit for prior year minimum tax (attach Form 8827) · · · · · · · · · ·  | 6e |
 f  Bond credits from:   Form 8860   Form 8912  | 6f |

| | | |
|---|---|---|
| 7  Total credits. Add lines 6a through 6f · · · · · · · · · · · · · · · · · | 7 | |
| 8  Subtract line 7 from line 5 · · · · · · · · · · · · · · · · · | 8 | 0 |
| 9  Personal holding company tax (attach Schedule PH (Form 1120)) · · · · · · · · · · | 9 | |
| 10  Other taxes. Check if from:  Form 4255   Form 8611   Form 8697  Form 8866   Form 8902   Other (attach schedule) · · · | 10 | |
| 11  Total tax. Add lines 8 through 10. Enter here and on page 1, line 31 · · · · · · · · · · | 11 | 0 |

## Schedule K  Other Information (see instructions)

| | Yes | No |
|---|---|---|
| 1  Check accounting method:  a X Cash  b Accrual  c Other (specify) ▶ | | |
| 2  See the instructions and enter the: | | |
| a  Business activity code no. ▶ 561730 | | |
| b  Business activity ▶ SERVICES | | |
| c  Product or service ▶ LANDSCAPING | | |
| 3  At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) · · · · · · · · · | | X |

If "Yes," attach a schedule showing: **(a)** name and employer identification number (EIN), **(b)** percentage owned, and **(c)** taxable income or (loss) before NOL and special deductions of such corporation for the tax year ending with or within your tax year.

| | Yes | No |
|---|---|---|
| 4  Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? · · · · · · · · | | X |

If "Yes," enter name and EIN of the parent corporation ▶ _____

| | Yes | No |
|---|---|---|
| 5  At the end of the tax year, did any individual, partnership, corporation, estate, or trust own, directly or indirectly, 50% or more of the corporation's voting stock? (For rules of attribution, see section 267(c).) · · · · · · · · | | X |

If "Yes," attach a schedule showing name and identifying number. (Do not include any information already entered in 4 above.) Enter percentage owned ▶ 0

| | Yes | No |
|---|---|---|
| 6  During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) · · · · · · · · · · · · · · · · · | | X |

If "Yes," file **Form 5452**, Corporate Report of Nondividend Distributions.

If this is a consolidated return, answer here for the parent corporation and on **Form 851**, Affiliations Schedule, for each subsidiary.

| | Yes | No |
|---|---|---|
| 7  At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of (a) the total voting power of all classes of stock of the corporation entitled to vote or (b) the total value of all classes of stock of the corporation? · · · · · · · · · · · · · · · · · | | X |

If "Yes," enter: (a) Percentage owned ▶ 100
and (b) Owner's country ▶ COOK

 c  The corporation may have to file **Form 5472**, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter number of Forms 5472 attached ▶ _____

8  Check this box if the corporation issued publicly offered debt instruments with original issue discount · · · ▶
   If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments.

9  Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____

10  Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ 2

11  If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here ▶
    If the corporation is filing a consolidated return, the statement required by Temporary Regulations section 1.1502-21T(b)(3) must be attached or the election will not be valid.

12  Enter the available NOL carryover from prior tax years (Do not reduce it by any deduction on line 29a.) ▶ $ _____

13  Are the corporation's total receipts (line 1a plus lines 4 through 10 on page 1) for the tax year **and** its total assets at the end of the tax year less than $250,000? · · · · · · ·
    If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2 on page 4. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ▶ $ _____

**Note:** If the corporation, at any time during the tax year, had assets or operated a business in a foreign country or U.S. possession, it may be required to attach **Schedule N (Form 1120)**, Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

**Note:** The corporation is not required to complete Schedules L, M-1, and M-2 if Question 13 on Schedule K is answered "Yes."

## Schedule L    Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | | | 105 |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | ( ) | | ( ) | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach schedule) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach schedule) | | | | |
| 10a | Buildings and other depreciable assets | | | 33,500 | |
| b | Less accumulated depreciation | ( ) | | 448 ) | 33,052 |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach schedule) | | | | |
| 15 | Total assets | | | | 33,157 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach schedule) | | | | |
| 19 | Loans from shareholders | | | | 9,198 |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | 30,000 |
| 21 | Other liabilities (attach schedule) | | | | |
| 22 | Capital stock:    a Preferred stock | | | | |
| | b Common stock | | | 100 | 100 |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings-Appropriated (attach schedule) | | | | |
| 25 | Retained earnings-Unappropriated | | | | (6,141) |
| 26 | Adjustments to shareholder's equity (attach schedule) | | | | |
| 27 | Less cost of treasury stock | ( ) | | ( ) | |
| 28 | Total liabilities and stockholders' equity | | | | 33,157 |

## Schedule M-1    Reconciliation of Income (Loss) per Books With Income per Return    (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | (6,141) | 7 | Income recorded on books this year not included on this return (itemize): Tax-exempt interest $ _____ | |
| 2 | Federal income tax per books | | | | |
| 3 | Excess of capital losses over capital gains | | | | |
| 4 | Income subject to tax not recorded on books this year (itemize): _____ | | 8 | Deductions on this return not charged against book income this year (itemize): | |
| 5 | Expenses recorded on books this year not deducted on this return (itemize): | | a | Depreciation $ _____ | |
| a | Depreciation $ _____ | | b | Charitable contributions $ _____ | |
| b | Charitable contributions $ _____ | | | | |
| c | Travel and entertainment $ _____ | | 9 | Add lines 7 and 8 | |
| 6 | Add lines 1 through 5 | (6,141) | 10 | Income (page 1, line 28)-line 6 less line 9 | (6,141) |

## Schedule M-2    Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | | 5 | Distributions:    a Cash | |
| 2 | Net income (loss) per books | (6,141) | | b Stock | |
| 3 | Other increases (itemize): _____ | | | c Property | |
| | _____ | | 6 | Other decreases (itemize): | |
| | | | 7 | Add lines 5 and 6 | |
| 4 | Add lines 1, 2, and 3 | (6,141) | 8 | Balance at end of year (line 4 less line 7) | (6,141) |

P 000360

Form **4562**

(Rev. January 2006)
Department of the Treasury
Internal Revenue Service

# Depreciation and Amortization
## (Including Information on Listed Property)

▶ See separate instructions.    ▶ Attach to your tax return.

OMB No. 1545-0172

**2005**

Attachment
Sequence No. **67**

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| J & J TREE SERVICES CO | FORM 1120 | 20-3798104 |

## Part I  Election To Expense Certain Property Under Section 179
**Note:** If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses · · · · · · · · · · · · · | **1** | 105,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) · · · · · · · · · · · · · · | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation · · · · · · · · · · · · · · | **3** | 420,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | **5** | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| 6 | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 · · · · · · · · · · · · · · | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 · · · · · · · · · · · | **8** | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 · · · · · · · · · · · · · · · · | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2004 Form 4562 · · · · · · · · · · · | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5  (see instructions) | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 · · · · · · · · | **12** | |
| 13 | Carryover of disallowed deduction to 2006. Add lines 9 and 10, less line 12 ▶ | **13** | |

**Note:** Do not use Part II or Part III below for listed property. Instead, use Part V.

## Part II  Special Depreciation Allowance and Other Depreciation  (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special allowance for certain aircraft, certain property with a long production period, and qualified NYL or GO Zone property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 | Property subject to section 168(f)(1) election · · · · · · · · · · · · · · · · · · · | **15** | |
| 16 | Other depreciation (including ACRS) · · · · · · · · · · · · · · · · · · · · · | **16** | |

## Part III  MACRS Depreciation  (Do not include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2005 · · · · · · · · · | **17** | |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here · · · · · · · · · · · · · · · · · · · ▶ | | |

### Section B - Assets Placed in Service During 2005 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only-see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a  3-year property | | | | | | |
| b  5-year property | | | | | | |
| c  7-year property | | | | | | |
| d  10-year property | | | | | | |
| e  15-year property | | | | | | |
| f  20-year property | | | | | | |
| g  25-year property | | | 25 yrs. | | S/L | |
| h  Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| I  Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

### Section C - Assets Placed in Service During 2005 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a  Class life | | | | | S/L | |
| b  12-year | | | 12 yrs. | | S/L | |
| c  40-year | | | 40 yrs. | MM | S/L | |

## Part IV  Summary  (see instructions)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 · · · · · · · · · · · · · · · · · · · · · | **21** | 448 |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr · · · | **22** | 448 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs · · · · · · · · | **23** | |

For Paperwork Reduction Act Notice, see separate instructions.    EEA    Form **4562** (2005) (Rev. 1-2006)

P 000370

## Part V   Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

### Section A - Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)

| 24a Do you have evidence to support the business/investment use claimed? | Yes | No | 24b If "Yes," is the evidence written? | Yes | No |
|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special allowance for certain aircraft, certain property with a long production period, and qualified NYL or GO Zone property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) | | | | | 25 | | | |
| **26 Property used more than 50% in a qualified business use:** | | | | | | | | |
| TRAILER | 2005 11 20 | 100 % | 1,500 | 1,500 | 5 | SL | 50 | |
| TRUCK92-GM | 2005 12 01 | 100 % | 10,000 | 10,000 | 5 | SL | 333 | |
| TRUCK | 2005 12 20 | 100 % | 22,000 | 22,000 | 10 | SL | 65 | |
| **27 Property used 50% or less in a qualified business use:** | | | | | | | | |
| | | % | | | | S/L- | | |
| | | % | | | | S/L- | | |
| | | % | | | | S/L- | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | 28 | | 448 | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | 29 | | |

### Section B - Information on Use of Vehicles

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Total business/investment miles driven during the year ( **do not** include commuting miles) | | | | | | | | | | | | |
| 31 | Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 | Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 | Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 | Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 | Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 | Is another vehicle available for personal use? | | | | | | | | | | | | |

### Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 | Do you treat all use of vehicles by employees as personal use? | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles.

## Part VI   Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2005 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2005 tax year | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report | | | | 44 | |

**Statement Summary**  CONFIDENTIAL                                      **2005**

OTHER DEDUCTIONS                                          STATEMENT -1-26
FORM 1120, PAGE 1, LINE 26                                     PAGE 1
Name(s) shown on return                                   Identifying Number
J & J TREE SERVICES   CO                                   20-3798104

| DESCRIPTION | AMOUNT |
|---|---|
| EQUIPMENT RENTAL | 1,600 |
| CAR EXPENSES | 4,255 |
| HIGHWAY (TOLL ) | 221 |
| MATERIALS & SUPPLIES | 7,157 |
| OFFICE EXPENSES | 800 |
| PROFESSIONAL FEE | 260 |
| CONTRACTOR LABOR | 3,500 |
| TOTAL | 17,793 |

P 000372

**2005 Form IL-1120**

## Corporation Income and Replacement Tax Return

Due on or before the 15th day of the 3rd month following the close of the tax year.

If this return is not for calendar year 2005, write your fiscal year here.

Tax year beginning _____ , ending _____

| Write the amount you are paying |
|---|
| $         0 |

## Step 1 : Provide the following business information

**A** Write your business name and mailing address.
If you have an address change, check this box.

J & J TREE SERVICES CO
Name

_____
C/O

7831 W RACHER
Mailing address

Chicago, IL 60656
City      State      ZIP

**B** Check the box if one of the following apply:
X first return    ___ final return (if final, write the date _____

**C** If this is a final return because you sold this business, write
the date sold _____ . and the new owner's FEIN.
_____

**D** Check the box if your business is
___ Combined return (unitary)    ___ Foreign insurer

**E** If you have completed the following federal forms, check the box and
**attach** them to this return.
___ Federal Schedule 8886    ___ Federal Schedule M-3

**F** **Special Apportionment Formulas.** If you use a special apportionment formula,
mark the appropriate box and see Special Apportionment Formula instructions.
___ Insurance companies
___ Financial organizations
___ Transportation companies

**G** Write your federal employer identification no. (FEIN)
_____ 20-3798104 _____

**H** Write your Illinois Business Tax number. (IBT)
___ ___ ___ ___ ___ ___

**I** If you are a member of a group filing a federal
consolidated return, write the FEIN of the parent.
___ ___ ___ ___ ___ ___

**J** Write the state and zip code where your
accounting records are kept. (Use the two-letter
postal abbreviate for your state. Ex., IL, GA, etc.)
_____
State      Zip

**K** If you are making the business income election, to
treat all nonbusiness income as business income,
check here and write "0" on Lines 26 and 34.

**L** Check this box if you annualized your income on
Form IL-2220.

**M** Check your method of accounting.
X Cash    ___ Accrual    ___ Other

## Step 2 : Figure your income or loss

*Attach payments here ▲*

| | | |
|---|---|---|
| 1 | Federal Taxable Income from U.S. Form 1120, Line 30, or U.S. Form 1120-A, Line 26. **Attach** a copy of your federal return. | 1   (6,141) |
| 2 | Net operating loss deduction from U.S. Form 1120, Line 29a, or U.S. Form 1120-A, Line 25a. | 2 _____ |
| 3 | State, municipal, and other interest income excluded from Line 1. | 3 _____ |
| 4 | Illinois income and replacement tax deducted in arriving at Line 1. | 4 _____ |
| 5 | Illinois Bonus Depreciation addition. **Attach** Form IL-4562. | 5 _____ |
| 6 | Related Party Expenses additions. **Attach** Schedule 80/20. | 6 _____ |
| 7 | Distributive shares of additions. **Attach** Schedule K-1-P or K-1-T. | 7 _____ |
| 8 | Other additions. **Attach** Illinois Schedule M (for IL-1120 filers). | 8 _____ |
| 9 | Add Lines 1 through 8. This amount is your income or loss. | 9   (6,141) |

BD   BE   DE   FI   IZ   JN   LN   MC   ME   NS   TG   TF   TS   UB   UD   UL   UM   XX

IL-1120 (R-12/05)
ID: 3107

AL ____ DR ____ ID ____

P 000373

Page 1 of 3

10     Write the amount of your income or loss from Line 9        **10**    (6,141)

## Step 3: Figure your base income or loss

| | | | |
|---|---|---|---|
| 11 | Federally-taxed refund of Illinois income and replacement tax. | 11 | |
| 12 | Interest income from U.S. Treasury and other exempt federal obligations. | 12 | |
| 13 | Enterprise Zone Dividend subtraction. **Attach Schedule 1299-B.** | 13 | |
| 14 | Enterprise Zone Interest subtraction. **Attach Schedule 1299-B.** | 14 | |
| 15 | High Impact Business Dividend subtraction. **Attach Schedule 1299-B.** | 15 | |
| 16 | High Impact Business Interest subtraction. **Attach Schedule 1299-B.** | 16 | |
| 17 | Contribution subtraction. **Attach Schedule 1299-B.** | 17 | |
| 18 | Contributions to certain job training projects (see instructions). | 18 | |
| 19 | Foreign dividend subtraction. **Attach Schedule J.** | 19 | |
| 20 | Illinois Bonus Depreciation subtraction. **Attach Schedule IL-4562.** | 20 | |
| 21 | Related-Party Expenses subtraction. **Attach Schedule 80/20.** | 21 | |
| 22 | Distributive share of subtractions. **Attach Schedule K-1-P or K-1-T.** | 22 | |
| 23 | Other subtractions. **Attach Schedule M** (for IL-1120 filers). | 23 | |
| 24 | Total subtractions. Add Lines 11 through 23. | 24 | |
| 25 | **Base income or net loss.** Subtract Line 24 from Line 10. | 25 | (6,141) |

**STOP**     If the amount on Line 25 is derived inside and outside Illinois, complete Step 4; otherwise go to Step 5.

## Step 4: Figure your income allocable to Illinois

| | | | |
|---|---|---|---|
| 26 | Nonbusiness income or loss. **Attach Schedule NB.** | 26 | |
| 27 | Non-unitary partnership business income or loss included in Line 25. | 27 | |
| 28 | Add Lines 26 and 27. | 28 | |
| 29 | Business income or loss. Subtract Line 28 from Line 25. | 29 | |
| 30 | Total sales everywhere (this amount cannot be negative). | 30 | |
| 31 | Total sales inside Illinois (this amount cannot be negative). | 31 | |
| 32 | Apportionment Factor. Divide Line 31 by Line 30 (carry to six decimal places). | 32 | |
| 33 | Business income or loss apportionable to Illinois. Multiply Line 29 by Line 32. | 33 | |
| 34 | Nonbusiness income or loss allocable to Illinois. **Attach Schedule NB.** | 34 | |
| 35 | Non-unitary partnership business income or loss apportionable to Illinois. | 35 | |
| 36 | **Base income or net loss allocable to Illinois.** Add Lines 33 through 35. | 36 | |

## Step 5: Figure your net income

| | | | |
|---|---|---|---|
| 37 | Base income or net loss from Step 3, Line 25, or Step 4, Line 36. | 37 | (6,141) |
| 38 | Illinois net loss deduction. **Attach Schedule NLD or UB/NLD.** If Line 34 is zero or a negative amount, write "0." | 38 | |
| 39 | **Net income.** Subtract Line 38 from Line 37. | 39 | 0 |

## Step 6: Figure your net replacement tax

| | | | |
|---|---|---|---|
| 40 | Replacement Tax. Multiply Line 39 by 2.5% (.025). | 40 | |
| 41 | Recapture of investment credits. **Attach Schedule 4255.** | 41 | |
| 42 | Replacement Tax before credits. Add Lines 40 and 41. | 42 | |
| 43 | Investment credits. **Attach Form IL-477.** | 43 | |
| 44 | **Net replacement tax.** Subtract Line 43 from Line 42. If the amount is negative, write "0." | 44 | 0 |

Form IL-1120 (R-12/05)

ID. 3107

## Step 7: Figure your net income tax

| | | | |
|---|---|---|---|
| 45 | Income tax. Multiply Line 39 by 4.8% (.048). | 45 | |
| 46 | Recapture of investment credits. **Attach Schedule 4255.** | 46 | |
| 47 | Income tax before credits. Add Lines 45 and 46. | 47 | |
| 48 | Income tax credits. **Attach Schedule 1299-D.** | 48 | |
| 49 | **Net income tax.** Subtract Line 48 from Line 47. If the amount is negative, write "0." | 49 | 0 |

## Step 8: Figure your refund or balance due

| | | | |
|---|---|---|---|
| 50 | Net replacement tax from Line 44. | 50 | 0 |
| 51 | Net income tax from Line 49. | 51 | 0 |
| 52 | **Total net income and replacement taxes.** Add Lines 50 and 51. | 52 | 0 |
| 53 | Self-assessed penalties. **Attach Form IL-2220 (see instructions).** | 53 | |
| 54 | Add Lines 52 and 53. | 54 | 0 |
| 55 | Payments. | | |
| | a Credit from 2004 overpayment. | a | |
| | b Total estimated payments. | b | |
| | c Form IL-505-B (extension) payment. | c | |
| 56 | Total payments. Add Lines 55a through 55c. | 56 | |
| 57 | **Overpayment.** If Line 56 is greater than Line 54, subtract Line 54 from Line 56. | 57 | |
| 58 | Amount to be credited to 2006. | 58 | |
| 59 | **Refund.** Subtract Line 58 from Line 57. This is the amount to be refunded. | 59 | |
| 60 | **Tax due.** If Line 54 is greater than Line 56, subtract Line 56 from Line 54. | | |
| | This is the amount you owe. | 60 | 0 |

▶ **Make your check payable to "Illinois Department of Revenue" and attach to page 1 of this form** ◀

Special Note   Write the amount of your payment on the top of Page 1 in the space provided.

## Step 9: Sign here

Under penalties of perjury, I state that I have examined this return and, to the best of my knowledge, it is true, correct, and complete.

| Signature of authorized officer | Date | Title | Phone |
|---|---|---|---|
| | 01-21-2007 | 32-0069439 | |
| Signature of preparer | 134 E BRIARCLIFF | Preparer's Social Security number or firm's FEIN | |
| NIGO CORPORATION | BOLINGBROOK IL 60440 | | 630-972-1344 |
| Print preparer's firm name (or yours, if self-employed) | Address | | Phone |

▶ **Mail this return to: Illinois Department of Revenue, P.O. Box 19008, Springfield, IL 62794-9008** ◀

 000375

IL-1120 (R-12/05)
ID: 3107

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center. IL-492-0089

**Plaintiff's Exhibit 8**

**Defendant's Amended Rule 26(a)(1) Disclosures**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSE ANDREU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 0473 |
| v. | ) |
| | ) Judge Der-Yeghiayan |
| UNITED PARCEL SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT UNITED PARCEL SERVICE'S
## AMENDED DISCLOSURES PURSUANT TO RULE 26(a)(1)

Defendant United Parcel Service ("UPS") submits its mandatory disclosures pursuant to

Fed. R. Civ. P. 26(a)(1) as follows:

Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local

rule, a party shall, without awaiting a discovery request, provide to the other parties:

    (A)    the name and, if known, the address and telephone number of each individual
likely to have discoverable information that the disclosing party may use to
support its claims or defenses, unless solely for impeachment, identifying the
subjects of the information:

    **RESPONSE:**  Jimmy Millard
                     United Parcel Service
                     150 South Lombard Road
                     Addison, IL  60101-3020

                     Has information regarding UPS's policies and procedures.

                     Tom Haelke
                     United Parcel Service
                     150 South Lombard Road
                     Addison, IL  60101-3020

                     Has information regarding UPS's policies and procedures.

Marilyn Ritchie
United Parcel Service
150 South Lombard Road
Addison, IL 60101-3020

Has information regarding UPS's policies and procedures.

Randy Dunn
United Parcel Service
150 South Lombard Road
Addison, IL 60101-3020

Has information concerning Andreu's termination.

David Ziltz
United Parcel Service
150 South Lombard Road
Addison, IL 60101-3020

Has information concerning Andreu's termination.

James Karr
United Parcel Service
55 Glenlake Parkway, NE
Atlanta, GA 30328

Has information concerning Andreu's COBRA notification.

Kerry Snyder
United Parcel Service
1800 East 1st Avenue
Milan, IL 61264

Has information concerning Andreu's termination.

(B)     a copy of, or a description by category and location of all documents, data
        compilations, and tangible things in the possession, custody or control of the party
        and that the disclosing party may use to support its claims or defenses, unless
        solely for impeachment;

        **RESPONSE:** See documents Bates-stamped UPS 0042-UPS 00128 produced by
        UPS (documents Bates-stamped UPS 0001-UPS 0041 were previously produced).

(C)     a computation of any category of damages claimed by the disclosing party,
        making available for inspection and copying as under Rule 34 the documents or
        other evidentiary material, not privileged or protected from disclosure, on which

such computation is based, including materials bearing on the nature and extent of injuries suffered;

**RESPONSE:** Not applicable.

(D)     for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**RESPONSE:** Not applicable.


DATED:  June 19, 2007                    UNITED PARCEL SERVICE

                                         By: _____
                                              One of its Attorneys


D. Scott Watson, #06230488
Ellen M. Girard, #6276507
Quarles & Brady LLP
500 West Madison Street, Suite 3700
Chicago, IL  60661-2511
(312)  715-5000


QBCHI\920018.00936\524628.1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the

foregoing United Parcel Service's Amended Disclosures Pursuant to Fed.R.Civ.P.

26(a)(1) to be served upon:

> Timothy J. Coffey
> The Coffey Law Office, P.C.
> 1403 East Forest Avenue
> Wheaton, Illinois  60187
> tcofflaw@sbcglobal.net

by depositing a copy of same in the U.S. Mail chute at 500 W. Madison Street, Chicago,

Illinois, before the hour of 4:00 p.m. this 19th day of June, 2007.

_____
D. Scott Watson

**Plaintiff's Exhibit 9**

**Court 's June 14, 2007, Order**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 473 | **DATE** | 6/14/2007 |
| **CASE TITLE** | Jose Andreu vs. United Parcel Service, Inc., | | |

## DOCKET ENTRY TEXT

Plaintiff's motion for extension of time to complete discovery [26] is granted as follows: Plaintiff's expert disclosure and reports shall be served by 07/16/07. Defendant's expert disclosure and reports shall be served by 07/30/07. All discovery shall be noticed in time to be completed by 08/13/07. Dispositive motions are to be filed by 09/13/07. Responses to the dispositive motions, if any, are to be filed by 09/27/07 and replies, if any, are to be filed by 10/04/07. Status hearing reset to 11/14/07 at 9:00 a.m. Status hearing set for 10/24/07 is stricken.

* For further details see attached order

Docketing to mail notices.

| | | Courtroom Deputy Initials: | maw |
|---|---|---|---|

**Plaintiff's Exhibit 10**

**Plaintiff's First Request for Production of Documents**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSE ANDREU,  )
)
Plaintiff,  )
)
v.  )    Case No. 07 C 00473
)
UNITED PARCEL SERVICE, INC.,  )    Judge Samuel Der-Yeghiayan
)
Defendant.  )    Magistrate Judge Mason

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
### AND OTHER TANGIBLE THINGS TO DEFENDANT

Plaintiff, JOSE ANDREU, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant produce at the offices of his attorneys, within 30 days of service hereof, the following documents (as defined in Rule 34(a)) in the possession or control of Defendant, its agents or attorneys, in the manner in which they are usually maintained or categorized and identified according to the numbered requests below.

### I. INSTRUCTIONS

A.    In producing these documents, the Defendant is required to furnish all documents known or available to it regardless of whether the documents are possessed (a) directly by the Defendant; (b) by the Defendant's present or former attorneys or their agents, employees, representatives, or investigators; or © by the defendant's affiliates, predecessors, or other legal entities or associations under the Defendant's control.

B.    If any document cannot be produced in full, produce the document to the fullest extent possible, specifying the reason(s) for your inability to produce the remainder.

C.    This document request is a continuing one. If, after producing the required documents, Defendant obtains or becomes aware of any additional documents responsive to this request, Defendant is required to produce them.

D.    If Defendant claims that any document is immune from production because of a privilege, please provide the following information with regard to each such document:

      i.    Type (e.g, letter, memorandum, etc.);
      ii.    Author or preparer;
      iii.    Recipient;
      iv.    Date of recording, preparation or transmittal;
      v.    Subject matter; and,
      vi.    Basis of claim of privilege.

## II. DEFINITIONS

A.   "Defendant," unless otherwise indicated, refers to the Defendant United Parcel Service, Inc., and, when not negated by the context, also refers to each and every officer, employee, attorney, or agent of such entity who presently holds such a position or who has held such a position during the relevant time period.

B.   The term "document" refers to and includes, but is not limited to, the following whether printed or reproduced by any process, or written, and/or produced by hand, and whether or not claimed to be privileged or otherwise protected from discovery, namely: notes, correspondence; communications of any nature; telegrams; memoranda, notebooks of any character; summaries or records of personal conversations; diaries; routing slips; reports; publications; photographs; minutes or records of meetings; transcript of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts,including all modifications and/or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts, revisions of drafts or translations of any document; tape recordings; records and dictation belts; drawings, graphs, charts, phonograph records, computer or other recording tapes, and every other type of physical evidence or data compilation. Any document with any     marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or nay notation of any character and not a part of the original text or any reproduction thereof, is to be considered a separate document for purposes of this request.

## III. DOCUMENTS TO BE PRODUCED

1.   All documents and tangible things that Defendant believes are relevant to the subject matter of this action and/or any of the allegations contained in the Complaint.

2.   All documents and tangible things relied upon or utilized by any expert or opinion witness on behalf of Defendant in formulating his or her opinion.

3.   All documents and tangible things which Defendant intends to produce, rely upon or proffer as evidence at any trial in this matter.

4.   Any and all documents describing, recording or referring to all communications between or among the Defendant, its employees, officers or agents, and any third party, concerning the employment or termination of the employment of Plaintiff by Defendant, or the allegations contained in the Complaint.

5.   Any and all documents describing, recording or referring to all communications between Plaintiff, his agents and representatives, and the Defendant, any of its employees, officers or agents, concerning the employment, or termination of the employment of Plaintiff by Defendant, or the allegations contained in the Complaint.

6.   Any and all of Defendant's records concerning Plaintiff, including, but not limited to, personnel files, insurance records, payroll records, and all documents concerning job performance and any criticism of job performance.

7.    Any and all documents describing, recording, referring to, or in any manner related to all contracts, agreements, arrangements, or understandings between Defendant and Plaintiff, his agents and representatives, pertaining to any aspect of the employment relationship between Plaintiff and Defendant, including, without limitation, the terms and conditions (including salary and other benefits) of Plaintiff's employment by Defendant, the duties and anticipated duties of Plaintiff as an employee of Defendant, the compensation of Plaintiff, the work performance of Plaintiff and the termination of Plaintiff's employment by Defendant.

8.    Any and all employee handbooks, personnel manuals or other documents which contain any company standard, policy, rule, regulation or guideline in effect during Plaintiff's employment with Defendant.

9.    Any and all job descriptions and/or other documents that describe or otherwise relate to the positions held by and/or functions performed by Plaintiff during his employment with the Defendant.

10.   Summary plan descriptions and any and all other documents explaining or relating to fringe benefits available to Plaintiff at the time of the termination of his employment, and any amendments or modifications thereto.

11.   Any and all organization charts, employee directories or other documents depicting the Defendant organization and its employees within that organization during Plaintiff's employment with Defendant to date.

12.   Any and all records concerning unemployment or workers compensation benefits paid by Defendant to Plaintiff, including, but not limited to any and all records pertaining to proceedings before the Illinois Department of Employment Security and/or the Illinois Industrial Commission concerning Plaintiff.

13.   Any and all records of any statements made by any individual who has knowledge of any facts, occurrences or circumstances described in the Complaint.

14.   Any and all transcripts (depositions and hearings), notes or other documents prepared or obtained by Defendant or on behalf of Defendant, of or for use in any hearing involving Plaintiff's injuries and/or termination, including, but not limited to, worker's compensation hearings, unemployment compensation hearings, and union grievances.

15.   Copies of all collective bargaining agreements between Defendant and any Union of which Plaintiff was a member in effect during Plaintiff's employment with Defendant, and all side letters, supplemental agreements, and wage schedules related thereto.

16.   All documents identified or relied upon by Defendant in its answers to Plaintiff's First Set of Interrogatories, served upon Defendant concurrently with this document request.

17.   All documents which Defendant contends support or relate to any affirmative defense it has plead or intends to plead in the future in response to the allegations contained in the Complaint.

18.    All financial statements, including, but not limited to, monthly, quarterly or annual balance sheets and income statements, and audit reports prepared by Defendant or on Defendant's behalf during the years 2005 to present.

19.    All records of or documents related to the number of packages on the delivery truck Plaintiff was driving on February 9, 2005, while employed by Defendant.

20.    Any and all documents describing or related to the communications system through which Ms. Cheryl Bast received the calls she references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

21.    Any recording made of the content or received times of the calls Ms. Cheryl Bast references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

22.    Any documents related in any manner to the calls Ms. Cheryl Bast references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

Dated:      May 9, 2007

Respectfully Submitted,
JOSE ANDREU, Plaintiff,

By:_____
Timothy J. Coffey
THE COFFEY LAW OFFICE, P.C.
Attorneys for JOSE ANDREU
1403 E. Forest Avenue
Wheaton, IL  60187
(630) 534-6300

## CERTIFICATION OF SERVICE

I hereby certify that I served a true, accurate and complete copy of the foregoing Plaintiff's First Request to Produce Documents to Defendant to the following attorneys of record for Defendant by first-class, U.S. mail, postage pre-paid, on the 9th day of May, 2007.

D. Scott Watson
Quarles & Brady LLP
500 West Madison
Suite 3700
Chicago, IL 60661

Timothy J. Coffey
THE COFFEY LAW OFFICE, P.C.
Attorneys for JOSE ANDREU
1403 E. Forest Avenue
Wheaton, IL  60187
(630) 534-6300

**Plaintiff's Exhibit 11**

**Defendant's Objections and Responses to Plaintiff's First Request for Production**

**of Documents**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSE ANDREU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 0473 |
| v. | ) | |
| | ) | Judge Der-Yeghiayan |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OBJECTIONS AND RESPONSES TO
### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
### OF DOCUMENTS AND OTHER TANGIBLE THINGS TO DEFENDANT

Defendant, United Parcel Service, Inc. ("UPS") submits its Objections and Responses to

Plaintiff Jose Andreu's ("Plaintiff" or "Andreu") First Request for Production of Documents and

Other Tangible Things to Defendant as follows:

### GENERAL OBJECTIONS

1.      UPS objects to each request to the extent that it seeks documents protected by the

attorney/client and/or work product privileges.

2.      In responding to any request herein, UPS does not concede the relevancy, or

materiality or admissibility of the request and/or document(s) sought. UPS's responses are

made subject to any objections as to the competency, relevancy, materiality or admissibility of

such evidence it may advance in any proceeding.

### OBJECTIONS AND RESPONSES

REQUEST NO. 1: All documents and tangible things that Defendant believes are relevant
to the subject mater of this action and/or any of the allegations contained in the Complaint;

RESPONSE: UPS objects to Request No. 1 as vague, overbroad, unduly burdensome, not

reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0801.

REQUEST NO. 2: All documents and tangible things relied upon or utilized by any expert or opinion witness on behalf of Defendant in formulating his or her opinion.

RESPONSE: UPS objects to Request No. 2 as premature, vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, UPS has not sought the opinion of an expert or opinion witness but reserves the right to supplement this response in accordance with the scheduling order in this matter.

REQUEST NO. 3: All documents and tangible things which Defendant intends to produce, rely upon or proffer as evidence at any trial in this matter.

RESPONSE: UPS objects to Request No. 3 as premature, vague, overbroad and unduly burdensome. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0801. UPS reserves the right to supplement this response and to use documents and tangible things at trial as provided for by the Federal Rules of Evidence.

REQUEST NO. 4: Any and all documents describing, recording or referring to all communications between or among the Defendant, its employees, officers or agents, and any third party, concerning the employment or termination of the employment of Plaintiff by Defendant, or the allegations contained in the Complaint.

RESPONSE: UPS objects to Request No. 4 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped 00001 - 00134 produced by Teamsters Local 705.

REQUEST NO. 5: Any and all documents describing, recording or referring to all communications between Plaintiff, his agents and representatives, and the Defendant, any of its employees, officers or agents, concerning the employment, or termination of the employment of Plaintiff by Defendant, or the allegations contained in the Complaint.

RESPONSE: UPS objects to Request No. 5 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see documents Bates-stamped 00001 - 00134 produced by Teamsters Local 705. In addition, Plaintiff has copies of communications between counsel for UPS and Plaintiff's counsel.

REQUEST NO. 6: Any and all of Defendant's records concerning Plaintiff, including, but not limited to, personnel files, insurance records, payroll records, and all documents concerning job performance and any criticism of job performance.

RESPONSE: UPS objects to Request No. 6 as vague, overbroad, unduly burdensome, irrelevant, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0041, UPS 0112 - UPS 0209, UPS 0545 - UPS 0705, UPS 0801.

REQUEST NO. 7: Any and all documents describing, recording, referring to, or in any manner related to all contracts, agreements, arrangements, or understandings between Defendant and Plaintiff, his agents and representatives, pertaining to any aspect of the employment relationship between Plaintiff and Defendant, including, without limitation, the terms and conditions (including salary and other benefits) of Plaintiff's employment by Defendant, the duties and anticipated duties of Plaintiff as an employee of Defendant, the compensation of Plaintiff, the work performance of Plaintiff and the termination of Plaintiff's employment by Defendant.

RESPONSE: UPS objects to Request No. 7 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same,

see produced documents Bates-stamped UPS 0042 - UPS 0111, UPS 0133 - UPS 0136.

REQUEST NO. 8: Any and all employee handbooks, personnel manuals or other documents which contain any company standard, policy, rule, regulation or guideline in effect during Plaintiff's employment with Defendant.

RESPONSE: UPS objects to Request No. 8 as vague, overbroad, unduly burdensome, irrelevant, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waiving same, see produced documents Bates-stamped UPS 0042 - UPS 0111, UPS 0133 - UPS 0136.

REQUEST NO. 9: Any and all job descriptions and/or other documents that describe or otherwise relate to the positions held by and/or functions performed by Plaintiff during his employment with the Defendant.

RESPONSE: UPS objects to Request No. 9 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waiving same, see produced documents Bates-stamped UPS 0042 - UPS 0111, UPS 0133 - UPS 0136.

REQUEST NO. 10: Summary plan descriptions and any and all other documents explaining or relating to fringe benefits available to Plaintiff at the time of the termination of his employment, and any amendments or modifications thereto.

RESPONSE: UPS objects to Request No. 10 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waiving same, see produced documents Bates-stamped UPS 0042 - UPS 0111, UPS 0441 - UPS 0544.

REQUEST NO. 11: Any and all organization charts, employee directories or other documents depicting the Defendant organization and its employees within that organization during Plaintiff's employment with Defendant to date.

RESPONSE: UPS objects to Request No. 11 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0210.

REQUEST NO. 12: Any and all records concerning unemployment or workers compensation benefits paid by Defendant to Plaintiff, including, but not limited to any and all records pertaining to proceedings before the Illinois Department of Employment Security and/or the Illinois Industrial Commission concerning Plaintiff.

RESPONSE: UPS objects to Request No. 12 as vague, overbroad and unduly burdensome. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0202 - UPS 203, UPS 0209. Additional documents are being copied and will be produced.

REQUEST NO. 13: Any and all records of any statements made by any individual who has knowledge of any facts, occurrences or circumstances described in the Complaint.

RESPONSE: UPS objects to Request No. 13 as vague, overbroad, unduly burdensome, irrelevant, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0002.

REQUEST NO. 14: Any and all transcripts (depositions and hearings), notes or other documents prepared or obtained by Defendant or on behalf of Defendant, of or for use in any hearing involving Plaintiff's injuries and/or termination, including, but not limited to, worker's compensation hearings, unemployment compensation hearings, and union grievances.

RESPONSE: UPS objects to Request No. 14 as vague, overbroad, unduly burdensome, not

reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0801.

REQUEST NO. 15: Copies of all collective bargaining agreements between Defendant and any Union of which Plaintiff was member in effect during Plaintiff's employment with Defendant, and all side letters, supplemental agreements, and wage schedules related thereto.

RESPONSE:   UPS objects to Request No. 15 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0042 - UPS 0111, UPS 0706 - UPS 0800.

REQUEST NO. 16: All documents identified or relied upon by Defendant in its answers to Plaintiff's First Set of Interrogatories, served upon Defendant concurrently with this document request.

RESPONSE:   UPS objects to Request No. 16 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0801.

REQUEST NO. 17: All documents which Defendant contends support or relate to any affirmative defense it has plead (sic) or intends to plead in the future in response to the allegations contained in the Complaint.

RESPONSE:   UPS objects to Request No. 17 as vague, overbroad, unduly burdensome, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001 - UPS 0801.

REQUEST NO. 18: All financial statements, including, but not limited to, monthly, quarterly or annual balance sheets and income statements, and audit reports prepared by Defendant or on Defendant's behalf during the years 2005 to present.

RESPONSE: UPS objects to Request No. 18 as vague, overbroad, unduly burdensome, irrelevant, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence.

REQUEST NO. 19: All records of or documents related to the number of packages on the delivery truck Plaintiff was driving on February 9, 2005, while employed by Defendant.

RESPONSE: UPS objects to Request No. 19 as vague, overbroad and unduly burdensome. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0112 - UPS 0115, UPS 0801.

REQUEST NO. 20: Any and all documents describing or related to the communications system through which Ms. Cheryl Bast received the calls she references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

RESPONSE: UPS objects to Request No. 20 as vague, overbroad, unduly burdensome, irrelevant, not reasonably limited in time and/or scope, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0001.

REQUEST NO. 21: Any recording made of the content or received times of the calls Ms. Cheryl Bast references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

RESPONSE: UPS objects to Request No. 21 as vague, overbroad and unduly burdensome. Notwithstanding these objections and without waving same, see produced documents Bates-stamped UPS 0546 - UPS 0553.

REQUEST NO. 22: Any documents related in any manner to the calls Ms. Cheryl Bast references in her February 9, 2005 memo to Dave Ziltz (UPS 0001).

RESPONSE: UPS objects to Request No. 22 as vague, overbroad and unduly burdensome.

Notwithstanding these objections and without waving same, see responses to Requests 20 and 21.

DATED:    June 19, 2007                    UNITED PARCEL SERVICE, INC.

                                           By: _____
                                               One of Its Attorneys

John A. Klages (ARDC #06196781)
D. Scott Watson (ARDC # 06230488)
Ellen M. Girard (ARDC #06276507)
Quarles & Brady LLP
500 West Madison, Suite 3700
Chicago, IL 60661
312/715-5000
312/715-5155 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and accurate copy of the foregoing

Defendant's Objections and Responses to Plaintiff's First Request for Production of Documents

and Other Tangible Things to Defendant was served upon:

> Timothy J. Coffey
> The Coffey Law Office, P.C.
> 1403 East Forest Avenue
> Wheaton, Illinois 60187
> Email: tcofflaw@sbcglobal.net

by depositing same in the U.S. mail at 500 W. Madison Street, Chicago, Illinois 60661, at or

about 5:00 p.m., this 19th day of June, 2007.